SIMS v. JONES.

1. INDIFFERENT JURORS.—Where it appears to a trial judge from a *voir dire* examination that a juror is, or is not, indifferent in the cause, and he rules accordingly, this court will not interfere.

2. EVIDENCE—COLLATERAL PAPERS.—A writing is admissible in evidence to prove its existence only where it relates to a collateral circumstance, and an inference to the party arises out of the fact of its execution and existence, and not out of its particular contents.

3. CROSS-EXAMINATION—DOCUMENTS—HARMLESS ERROR.—It is defendant's right to prove written documents on the cross-examination of plaintiff's witnesses, and to introduce them as soon as proved, and it was error to exclude them at that stage, but it was harmless, and, therefore, not reversible, error, where defendant introduced them afterwards as a part of the testimony for the defence, excepting one which was ruled out as irrelevant and no exception taken. MR. CHIEF JUSTICE McIVER *dissenting*.

4. EVIDENCE—COMPROMISE.—There was no reversible error in permitting plaintiff to testify as to a suggestion of compromise made to him by a third person, where there was no testimony to show that such person had any authority from defendant to make any such offer, and where the statements of such persons were ruled out. MR. CHIEF JUSTICE McIVER *dissenting*.

5. EXCEPTIONS are faulty where they fail to specify the errors complained of.
6. EVIDENCE IN REPLY.—What testimony is admissible on the reply is largely in the discretion of the trial judge, and his rulings will not be disturbed where no abuse of discretion is shown.

Before GARY, J., Union, March, 1894.

Action by George T. Sims and E. L. Sims, as George T. Sims & Co., against W. T. Jones and Ida Jones, as administrators of Tyrrel J. Jones, deceased. The examination of the jurors on their *voir dire* was as follows:

J. G. Rice (by request of Mr. Munro): Q. Are you related to any of the parties to this suit? A. I don't know of any kinship. Q. Have you formed or expressed any opinion in regard to it? A. Yes, I have. Q. Is it such an opinion as is fixed and will not be changed by testimony? A. No, sir, I don't think so. Q. Are you sensible of any bias now, one way or the other? A. None at all. Q. You have formed an opinion? A. Yes, sir. By the Court: I rule the juror competent. Mr. Munro: I would like to ask the juror if he was present at either of the other trials in the case? (Objection by Mr. Schumpert.) By the Court: No, sir, he need not answer that. I rule the juror competent.

P. P. Hamilton (by request of Mr. Schumpert): Examination by Mr. Schumpert: Q. Are you related to any of the parties to this action? A. Well, sir, we claim some kin, me and Mr. Sims. I don't know exactly what kin it is. Q. You always claim kin? A. We do. Q. Your grand-mother was a Sims? A. Yes, my grand-mother was a Sims. Q. Have you formed or expressed an opinion? A. I have formed an opinion; I don't know as I have ever expressed it. Q. Would that prevent you from rendering a verdict according to the testimony and the law in the case? A. No, sir. Q. You know what kin you are? A. No, sir, I do not know. Q. You have always claimed kin? A. Yes, we are about fourth or fifth cousins, somewhere along there; I don't know what, I couldn't count it; in fact, I never count kindship when it gets off to a third cousin. Mr. Sims there calls me cousin, and I call him cousin, and a man that calls me cousin, I claim kin with him. Q.

Were you connected by marriage with the plaintiff? A. Yes, his mother and my wife are, I think, first cousins; I had forgotten that. Mr. Munro: That is not within the prohibited degrees. By the Court: Yes, I rule that it is. You are excused as a juror. (Exception by Mr. Munro.)

J. K. Young (by request of Mr. Schumpert): Examination by Mr. Schumpert: Q. Are you related or connected with any of the parties to this action? A. No, sir. Q. You know all the parties, do you not? A. Very well, yes. Q. Have you formed or expressed an opinion as to this case? A. Well, sir, during the trial of the case heretofore, the same case, it was thoroughly discussed in my store, before my fire, and I did form and express an opinion then, when the case was being tried before. Q. Would that prevent you from rendering a verdict? A. Well, I don't think it would; at the same time, I would not like to sit on the jury. Q. You have not only formed but you have expressed an opinion? A. Yes, I have expressed an opinion in my store. By the Court (to Mr. Munro): Have you anything to say as to his competency? Mr. Munro: I think he has made himself competent. He says he has an opinion, which would not influence him in the decision of the case. Naturally, no juror would want to sit on the case. By the Court: I rule him incompetent, from the fact that he did not answer the question directly. He said he did not think it would. The question was: Would that prevent you from rendering a verdict? If it would or would not, he ought to have answered the question. I rule the juror incompetent. (Exception by Mr. Munro.)

*Messrs. Munro & Munro*, for appellants.

*Messrs. Melton & Melton*, contra.

January 31, 1895. The opinion of the court was delivered by

MR. JUSTICE GARY. This action is upon an alleged promissory note of the defendants' testator, Tyrrel J. Jones, deceased. The defence is forgery, and consequent want of consideration. The jury found for the plaintiffs upon the trial on Circuit. The defendants appeal to this court on numerous exceptions.

The first three exceptions will be discussed together, and are as follows: "And now come the defendants, and except to the rulings of his honor over the objections of defendants, alleging error in the following particulars: 1. In holding that the juror, J. G. Rice, was a competent juror. 2. In holding that the juror, P. P. Hamilton, was not a competent juror. 3. In holding that the juror, J. K. Young, was not a competent juror." These jurors were sworn upon their *voir dire.* Their examination will be set forth in the report of this case. Section 2403, Rev. Stat. (1893), provides: "The court shall, on motion of either party in suit, examine on oath any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause and another shall be called."

In the case of *State* v. *Dodson,* 16 S. C., 453, the court uses this language: "The question is whether the Circuit Judge erred in allowing certain jurors to be presented to the prisoners, who when examined on their *voir dire* stated that they had formed an opinion in reference to the case from what they had heard or seen in the newspapers, which, however, would not in the least influence their minds as jurors; that they were not sensible of any bias or prejudice whatever, either for or against the prisoners, and would be governed by the evidence adduced in the case. The statute, after providing that the court shall, upon the motion of either party to the cause, examine any person called as a juror upon his *voir dire,* declares that: 'If it appears to the court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause, and another shall be called.' Gen. Stat., ch. CXI., § 25, p. 523. This would seem to vest the power of determining the question of fact as to whether the jury was indifferent, in the hands of the court called upon to try the case, and we do not see how this court could undertake to review such determination. But

even were this not so, we see no error in the course pursued by the Circuit Judge. Any other course would have the effect of excluding from the jury box in any case of such magnitude or public interest as would be likely to attract attention, the very class of persons who would be best qualified to occupy that position; for in cases of that character it would be difficult to find persons of ordinary intelligence who had not received some impressions in regard to a case from what they had heard or read in the newspapers." Same point: *State* v. *Williams*, 31 S. C., 257; *State* v. *Merriman*, 34 *Id.*, 17; *State* v. *Summers*, 36 *Id.*, 479; *State* v. *Haines*, *Ibid.*, 504; *State* v. *McIntosh*, 39 *Id.*, 97. In the case of *State* v. *Merriman*, 34 S. C., on page 34, the court says: "The objection that the judge erred in rejecting the juror Fletcher, because of his relationship to the accused within the degrees stated in the record, cannot be sustained. We are not aware of any statute fixing the degrees either of consanguinity or affinity within which a juror is disqualified; and it must, therefore, be left to the Circuit Judge to determine whether the fact that the juror's father and the grand-father of the accused were brothers, was such a relationship as would be likely to render the juror not indifferent to this case." These exceptions are overruled.

The fourth exception complains of error on the part of the presiding judge as follows: "In admitting the testimony of the witness, Charles P. Sims, that liens were given by witness' mother to T. J. Jones during the years 1872 to 1879 inclusive." The testimony of the witness was introduced for the purpose simply of showing that liens were given as therein stated, but no attempt was made to prove the *contents* of the liens. This comes within the principle laid down by the court in the case of *Lowry* v. *Pinson*, 2 Bail., 328, as follows: "But where the writing relates to a collateral circumstance, and an inference favorable to the party arises out of the fact of its execution and existence, and not out of its particular contents, parol evidence is admissible. Of this the case of *Spiers* v. *Willison*, 4 Cranch, 398, is an instance. There parol evidence of the existence of a deed of gift was admitted, to show the nature of the possession that accompanied the deed. The allegation of the plaintiff

here is that Isaac J. Pinson conveyed the land in dispute to the defendant for the purpose of defrauding her; and the object of the evidence, that he about the same time made a voluntary bill of sale to the defendant and David Maddern of all of his negroes, the bulk of his remaining property, was to show the fraudulent intention by way of deduction, not from the particular provisions of the bill of sale, but from the fact of its execution without consideration. The evidence was, therefore, properly admitted." This exception is overruled.

The fifth, sixth, seventh, and eighth exceptions complain of error on the part of the trial judge as follows: "5. In ruling that the defendants could not introduce documentary evidence until after plaintiffs had closed their case in chief, and in excluding deed of settlement after proof of same by plaintiffs' witness, Charles P. Sims, on cross-examination. 6. In ruling that the defendant could not introduce documentary evidence until after the plaintiffs had closed their testimony in chief, and in excluding the mortgage deed of S. W. Sims to T. J. Jones, after proof of same by plaintiffs' witness, Charles P. Sims, on cross-examination. 7. In refusing to allow the defendants to introduce documentary evidence after proof of same by plaintiffs' witness because plaintiffs had not closed their testimony in chief. 8. In refusing to permit the defendants to introduce in evidence four letters written by the witness, Charles P. Sims, after proof of same, because plaintiffs had not closed their testimony in chief."

The testimony mentioned in these exceptions was offered by the defendants when they came to their defence, and all admitted except the mortgage of S. W. Sims to T. J. Jones, mentioned in the sixth exception, which was refused on account of irrelevancy, and to which it seems no exception has been taken. The said mortgage is set out at length in the case, but the letters are not. The rule for the introduction of testimony is thus stated in the case of *Willoughby* v. *Railroad Company*, 32 S. C., 427–8, to wit: "The first exception imputes error to the Circuit Judge in refusing to allow the written agreement, which the plaintiff in her cross-examination admitted to be the contract under which she leased the rails, to be then read in

evidence. It seems that while the plaintiff was under cross-examination, the written agreement was shown to her, and she admitted 'her signature to the contract set up in the answer, and that it was the contract under which she leased the rails.' Now if this contract had been verbal instead of written, we do not see how defendant's counsel could have been prevented from asking the plaintiff, what were the terms of such contract? and it seems to us that asking the privilege of reading the terms which had been put down in writing, was in effect the same thing as asking what were the terms of a parol contract which lay at the foundation of the whole controversy.

"But as we think this question was conclusively determined by the recent case of *Owens* v. *Gentry*, 30 S. C., 490, we need not discuss it further. There the sheriff was sued for certain property, which he had seized under a warrant to enforce an agricultural lien, and he justified his seizure and asserted his right to the property under such warrant; and it was there held that the defendant had the right, in the cross-examination of one of plaintiff's witnesses, to prove the warrant and put the same in evidence at that time, because, however it may be in the United States Courts and in the courts of some of the other States, the rule here is, that the defendant may, if he can, make out his whole defence in the cross-examination of plaintiffs' witnesses. In the present case the defendant was sued for a trespass, and undertook to justify, or rather to deny, any trespass, because of a license contained in the very agreement under which plaintiff obtained the property about which the controversy arose. It is urged, however, that the agreement being signed by other parties as well as by plaintiff, it could not properly be offered in evidence until the signatures of such other parties had been proved; but it will be observed that the plaintiff not only admitted her signature to the paper, but also admitted that it contained the contract under which she asserted her right to the possession of the iron rails, and this dispensed with proof of the signatures of the other parties.

"Again, it is insisted that no substantial injury was done to the defendant by the refusal to allow the paper read at first, because afterwards, when the defendant came to offer its testi-

7—43

mony, the paper was duly proved and offered in evidence. If
the defendant had the legal right to have the paper read in the
first instance, then it was error to deny such right, and we are
bound so to declare it. But it might admit of grave doubt
whether the defendant sustained no substantial injury by the
refusal to allow the paper to be read in the first instance. It is
very clear that the terms of that contract lay at the foundation
of the whole controversy. Without it the plaintiff confessedly
had no shadow of right to the possession of the rails; and it
was specially set up in the answer as a justification for the al-
leged wrongful acts with which defendant was charged. Upon
its construction, which was a matter for the court alone, might
depend the question, whether plaintiff had any cause of action;
and it is not difficult to conceive how it may have been a very
material matter to the defendant to have this written agreement
before the court while the plaintiff was undertaking to make
out her cause of action."

It will be observed that the instruments of writing offered
in evidence in the cases of *Willoughby* v. *Railroad Company* and
*Owens* v. *Gentry*, during the introduction of plaintiff's testimony
in chief, were unquestionably *material*—in fact, were the founda-
tion upon which the defences set up in the answer rested. The
decisions in this State settle the law beyond controversy, that
*harmless* error committed by the presiding judge during the
progress of the trial on Circuit, is not ground for reversal by
this court. Where the rulings of the Circuit Judge are brought
in review before this court, two things must appear: 1st. That
the ruling to which exception was taken is erroneous. 2d. That
the appellant has suffered prejudice by such erroneous ruling.
Under the cases of *Owens* v. *Gentry* and *Willoughby* v. *Railroad
Co., supra*, the presiding judge failed to follow the proper rule
for the introduction of testimony on the cross-examination of
plaintiffs' witness, and in so doing we hold that he committed
error. We do not, however, see where the defendants have
been prejudiced by such error. It was incumbent on the ap-
pellant to make this appear, but he has failed to do so. These
exceptions are overruled.

The ninth, tenth, and eleventh exceptions complain of error

on the part of the presiding judge as follows: "9. In permitting the plaintiffs to introduce evidence that a compromise of the claim sued on was offered.   10. In permitting the plaintiff to introduce evidence that a compromise of the claim was refused.   11. In permitting the witness, Charles P. Sims, to testify (before plaintiffs closed their case in chief) to a conversation between him and P. M. Cohen in relation to a compromise of this action."   These exceptions can not be sustained for two reasons: 1st. Because Mr. Cohen, with whom the witness had the conversation in regard to the alleged compromise, did not claim that he was authorized by Mr. Jones, the defendant, to act in the premises; on the contrary, stated that, "What he did, he did himself as friend of both parties."   Such being the case, nothing said by him in regard to the compromise could have been construed as an admission on the part of the defendant, Jones, and was wholly immaterial.   2d. Because the presiding judge ruled out what Mr. Cohen told and wrote the witness.

The twelfth, thirteenth, and fourteenth exceptions complain of error on the part of the presiding judge as follows: "12. In admitting in evidence in reply the testimony of the witness, W. D. Humphries, of declarations of T. J. Jones to him.   13. In admitting in evidence in reply the testimony of the witness, Jesse Nix, of declarations of T. J. Jones to him.   14. In admitting in evidence in reply the receipt of J. C. P. Jeter to Ed. Cromer, dated December 22, 1887."   In the case of *Talbott & Sons* v. *Padgett*, 30 S. C., 167, the rule as to what the exception should contain is stated as follows: "The object of exceptions is a very important one.   It is to bring to the attention of the court the precise question of law or fact involved, and desired to be reviewed.   To do this effectually and definitely, something more must be stated than merely an occurrence, or order, or decree below, objected to as erroneous. The grounds of the alleged error must be presented in a direct and positive form, and especially if it be a legal error complained of, the principle of law alleged to be violated must be stated.   These exceptions fail to comply with this requirement.

But even if it be conceded that the object of the exceptions is to raise the question that the testimony mentioned was not

properly in reply, we do not think they can be sustained, as such testimony is largely in the discretion of the trial judge, and there is nothing showing an abuse of discretion in this case.    In the case of *Brice* v. *Miller*, 35 S. C., 537, the court says: "The appellants also object that some of the testimony was irrelevant and not in reply.   *  *  *  As to the objections based on irrelevancy and not being in reply, it is sufficient to say that these are matters which must necessarily be largely left to the discretion of the judge before whom the case is tried."    These exceptions are overruled.

It is the judgment of this court, that the judgment of the court below be affirmed.

MR. JUSTICE POPE.   Having concurred generally, I shall content myself with one observation: If the defendant in the court below, having excepted to the ruling of the Circuit Judge whereby his right to have the contents of the written papers brought out while the plaintiffs' witnesses were being cross-examined by him, had stopped there, as to such testimony, a new trial would have been inevitable.   However, the defendant did not elect to stop there.   On the contrary, he offered such contents in testimony afterwards.   He thus made manifest what was before unknown, viz: that the contents of the papers were immaterial.   It seems to me that Mr. Justice Gary has successfully differentiated the case at bar from the two previous cases, *Owens* v. *Gentry* and *Willoughby* v. *Railroad Company, supra,* and I agree with him that this was harmless error, under the circumstances of this case, and should not be allowed to cause a new trial.    There should be an end of litigation the moment the ends of justice have been attained.

MR. CHIEF JUSTICE McIVER *dissenting.*   While I concur with Mr. Justice Gary in the conclusions which he has reached on all the points except those specially mentioned herein, I am unable to agree with him as to such points, and will proceed to state briefly the grounds of my dissent.

The fifth, sixth, seventh, and eighth exceptions raised the question whether the Circuit Judge erred in refusing to permit defendants to offer in evidence during the cross-examination of

one of the plaintiffs' witnesses certain documents, the execution of which had been proved by such witness, not upon the ground that such papers were either incompetent or irrelevant testimony, but solely on the ground that the defendants could not be permitted to offer such evidence at that stage of the trial, but must wait until the plaintiffs had closed their testimony in chief; for it appears in the "Case" that the Circuit Judge was asked by one of the counsel for the plaintiffs, whether he sustained the objection to certain of such testimony only on the ground that it was irrelevant, and that he responded in these words: "I sustain it on the ground that the defendant cannot, at this stage, offer documentary evidence;" and again the Circuit Judge used this language: "I rule that the defendant cannot offer documentary evidence until his time has come—that is, after the plaintiff has closed his case." It seems to me, therefore, that the Circuit Judge has expressed his ruling in no uncertain terms, and the clear-cut legal question presented for the consideration of this court is, whether such ruling is erroneous.

The case of *Willoughby* v. *Railroad Company*, 32 S. C., 410, which does not seem to have been brought to the attention of the Circuit Judge, and, in fact, was not cited by counsel in the argument here, in my opinion, conclusively shows that such ruling was erroneous. So much of that case as relates to the question here under consideration, is so fully set out in the opinion of Mr. Justice Gary, as to supercede the necessity of repeating it here. The fact that the paper there offered in evidence during the cross-examination of one of plaintiffs' witnesses, and erroneously rejected, was very material to the defence set up by defendant, and, in fact, lay at the foundation of such defence, cannot, in my judgment, affect the principle upon which the ruling there made rested. If the documentary evidence rejected in the present case, only on the ground that it was offered at an improper time, was competent and relevant, then defendants had a legal right to have it received, and the denial of such legal right constitutes reversible error, as was said in Willoughby's case: "If the defendant had the legal right to have the paper read in the first instance, then it was error to

deny such right, and we are bound so to declare it." The fact that the rejected evidence—or, to speak more accurately, the most of it—was both competent and relevant, is shown by the fact that all of it, except the mortgage referred to in the sixth exception, was afterwards, when defendants came to offer their evidence, received.

Neither do I think that this court is justified in saying that the error was harmless, for I do not find that the contents of all the documents rejected in the first instance are set out in the "Case." At all events, it seems to me unsafe to say that the exclusion of competent and relevant evidence at the time it was first offered could result in no harm to the party offering it, if it should be afterwards received; for, as was said in the case of Willoughby, above cited: "It is not difficult to conceive how it may have been a very material matter to the defendant," to have the documentary evidence in question before the court, "while the plaintiff was undertaking to make out her cause of action." It seems to me, therefore, that the point made by the exceptions above referred to should be sustained.

Again, I think there was error in receiving any evidence in relation to an offer of compromise, for two reasons: 1st. Because there was no evidence tending to show that Cohen, the person through whom the offer of compromise—or, rather, from whom the inquiry came as to whether a compromise could be made—had the slightest authority from the defendants, or from any person authorized to speak for them, to make any such offer or any such inquiry; and, on the contrary, the testimony tended to show that he had no such authority. 2d. Because, even if Cohen had such authority, it would be clearly incompetent to show that any offer or attempt was made by defendants to obtain a compromise. While it is true that the Circuit Judge did rule that it was not competent for the plaintiff to prove what passed between himself and Cohen in relation to the terms of the offer of compromise, yet at the same time the witness was permitted to testify that a compromise was proposed and rejected. Now it seems to me that the injury to the defendants consisted in allowing proof that a compromise was proposed and rejected; and that the terms of such proposed compromise

was a wholly immaterial matter. It is very easy to see that in a case of this kind, where the defence was that the note was a forgery, there was nothing better calculated to prejudice the case of the defendant in the minds of the jury than to show that defendants had made an unsuccessful attempt to compromise. I think, therefore, that it was error to receive any evidence in relation to any proposition of compromise, and hence exceptions nine, ten, and eleven should be sustained.

Judgment affirmed.