## 12088

### MATHESON v. AMERICAN TELEPHONE & TELEGRAPH CO. *ET AL.*

#### (135 S. E., 306)

1. Evidence.—In action for trespass, declarations as to conduct of one of defendants prior to alleged occurrences *held* properly excluded, in absence of showing declarants were agents with authority to speak.

---

Note: On civil liability for using threatening or abusive language, see note in 5 A. L. R., 1286.

2. TRIAL.—Court has discretion to allow or refuse rebuttal evidence which should have been offered in chief.

3. EVIDENCE.—Declarations in nature of opinion in action for trespass, relating to past conduct of one of defendants and not bearing on any matters in controversy, *held* properly excluded.

4. TRIAL.—Charge inapplicable to testimony in case *held* properly refused.

5. TRIAL.—In action for trepass by telephone company employees, instruction submitting question of prescriptive right *held* proper when raised by answer without objection thereto.

6. APPEAL AND ERROR.—Instruction in action for trespass by telephone employees on question of prescriptive right *held* not prejudicial as being without support in evidence, in view of counsel's failure to call attention of Court thereto after request.

7. TRESPASS.—To justify punitive damages for trespass by employees of telephone company, plaintiff must show that acts were negligently and willfully done.

8. TRESPASS.—Instruction in action for trespass requiring establishing actual entrance negligently and willfully *held* proper, where punitive damages were asked.

9. TELEGRAPHS AND TELEPHONES.—Whether telephone company agent alleged to have trespassed on premises was acting within scope of authority *held* for jury.

10. APPEAL AND ERROR.—On appeal from judgment awarding non-suit, testimony in behalf of plaintiff and legitimate inferences therefrom must be taken as true.

11. TRESPASS.—Allegation that telephone company employee entered plaintiff's premises to investigate complaint and cursed, abused, and threatened plaintiff and her husband, *held* to state cause of action for trespass.

12. TRESPASS.—Telephone company employee entering premises for sinister purpose under cloak of *bona fide* purpose of investigating complaint is trespasser *ab initio.*

Before BONHAM, J., Richland, March, 1924. Affirmed in part, and in part reversed and remanded for trial.

Action by Lillie B. Matheson against the American Telephone & Telegraph Company and another. Judgment for defendants and plaintiff appeals.

*Messrs. D. W. Robinson and D. W. Robinson, Jr.,* for appellant, cite: *Former appeal:* 125 S. C., 301; 118 S. E.,

617. *Admissibility of statements of agent in regard to co-agent:* 129 S. C., 403; 124 S. E., 645. *Order amending complaint not appealed from binding on parties:* 130 S. C., 518; 126 S. E., 646; 129 S. C., 51; 123 S. E., 676; 128 S. C., 477; 122 S. E., 488. *Agency is question for jury where evidence shows facts from which agency may be inferred:* 132 S. C., 227; 128 S. E., 423; 128 S. C., 474; 122 S. E., 488; 114 S. C., 490; 104 S. E., 30. *Where more than one delict alleged as contributing to injury:* Code Civ. Pro., 1922, Secs. 427 and 430; 110 S. C., 370; 96 S. E., 559. *Admissibility of agent's own declarations as to agency:* 124 S. C., 350; 117 S. E., 594; 113 S. C., 501; 101 S. E., 860; 92 S. C., 164; 121 S. E., 202. *Entry by permission confers no adverse rights:* 125 S. C., 82; 117 S. E., 811; 124 S. C., 279; 117 S. E., 529; 118 S. C., 205; 110 S. E., 135; 86 S. C., 468; 77 S. C., 137; 57 S. E., 678; 12 L. R. A. (N. S.), 1140; 10 L. R. A., 484, and note; 23 P., 378; 9 R. C. L., 778; 99 N. W., 869; 66 L. R. A., 431. *Nature of adverse possession;* 132 S. C., 334; 128 S. E., 596; 114 S. C., 306; 103 S. E., 561; 25 S. C. L., 1; 34 Am. Dec, 581; 9 R. C. L., 777; 3 Washburn, 4th Ed., 129. *Rights of defendant limited by its written permit:* 117 S. C., 306; 109 S. E., 116; 87 S. C., 296; 84 S. C., 105. *Admissibility of prior and subsequent acts to prove malice:* 123 S. C., 324; 116 S. E., 273; 110 S. C., 370; 96 S. E., 559; 54 S. C., 498; 32 S. E., 567; 5 C. J., 669; Wigmore on Ev., 1st Ed., Sec. 396. *Company liable for willful torts of agent:* 117 S. C., 306; 109 S. E., 116; 114 S. C., 321; 103 S. E., 522; 113 S. C., 388; 101 S. E., 823; 110 S. C., 237; 96 S. E., 295; 87 S. C., 300; 69 L. R. A., 636. *Unnecessary stepping on land of another with malicious intent ground for actual and punitive damages:* 34 S. C. L., 437; 69 L. R. A., 634; 60 L. R. A., 427. *Jury may consider nervous breakdown resulting from tort:* 81 S. C., 321; 62 S. E., 314; 71 S. C., 345; 51 S. E., 121; 54 S. C., 502.

*Messrs. Nelson & Mullins,* for respondent, cite: *Former appeal:* 125 S. C., 297; 118 S. E., 617. *Admissibility of agent's own declaration as to agency:* Wigmore on Ev., Sec. 1078. *Where evidence affects only one of two defendants:* 120 S. C., 511. *Admission of evidence in rebuttal which might have been offered in chief is discretionary with Court:* 122 S. C., 179; 115 S. E., 212; 110 S. C., 357; 96 S. E., 526; 43 S. C., 91; 20 S. E., 905; 35 S. C., 537; 15 S. E., 272. *Declarations of agent not part of res gestae not admissible against principal:* 127 S. C., 1; 119 S. E., 776; 117 S. C., 44; 108 S. E., 363; 84 S. C., 190; 65 S. E., 1047; 62 S. C., 129; 40 S. E., 111; 53 S. C., 448; 31 S. E., 334; 69 A. S. R., 874; 27 S. C., 64; 2 S. E., 837; 19 S. C., 354; 17 S. C., 519; 5 S. C., 358; 4 S. C., 153. *Words do not constitute trespass to person:* 58 S. C., 532; 36 S. E., 997. *Master only liable for act of servant done within scope of employment:* 121 S. C., 324; 113 S. E., 637; 110 S. C., 73; 96 S. E., 478; 86 S. C., 73; 68 S. E., 131; 72 S. C., 205; 51 S. E., 677; 37 S. C., 198; 15 S. E., 878; 5 Rich., L. 17; 172 U. S., 434; 19 Sup. Ct. Rep., 296; 43 L. Ed., 543. *Test for determining whether servant was acting within scope of employment:* 86 S. C., 73; 68 S. E., 131; 26 Cyc., 1526; 1 Thompson on Negligence, 3rd Ed., Sec. 527. *Price paid for lease by defendant covered all damages for which owner could have recovered in condemnation proceeding:* 47 S. C., 485. *Right of owner of dominant estate to enter servient estate for repairs:* 126 S. C., 1; 119 S. E., 776; 123 S. C., 319; 116 S. E., 273; 121 S C., 429; 114 S. E., 408; 120 S. C., 224; 112 S. E., 919. *Express grant of easement does not prevent acquisition of additional rights by prescription:* 17 S. C., 136; 24 Pa. St., 298; 64 Am. Dec. 657; 9 R. C. L., 799. *Duty of counsel to object at trial to erroneous charge:* 123 S. C., 449; 117 S. E., 55; 95 S. C., 196; 78 S. E., 875; 80 S. C., 410; 61 S. E., 893. *Plaintiff bound by allegations of complaint:* 101 S. C., 29; 85 S. E., 156; 62 S. C., 322; 40

S. E., 665. *Charge to be considered in entirety; counsel desiring further charge must request it:* 129 S. E., 457; 128 S. C., 209; 122 S. E., 580; 122 S. C., 153; 115 S. E., 200; 99 S. C., 432; 83 S. E., 1008. *Erroneous charge not affecting result not reversible error;* 103 S. C., 343; 88 S. E., 26; 97 S. C., 79; 81 S. E., 428; 93 S. C., 420; 77 S. E., 135; 78 S. C., 81; 58 S. E., 969. *What exception must contain:* 100 S. C., 276; 84 S. E., 826; 99 S. C., 216; 83 S. E., 39; 64 S. C., 311; 42 S. E., 159.

October 27, 1926.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This cause has already been before this Court on questions pertaining to the pleadings. 125 S. C., 297; 118 S. E., 617. After the decision of the Court, plaintiff served an amended complaint. Thereupon the defendants moved before Hon. J. W. De Vore, Circuit Judge, for an order to strike out the same, or in any event the second cause of action thereof, and for an order requiring plaintiff to amend her complaint in accordance with the decision of this Court as announced. Judge De Vore required the plaintiff to strike out certain paragraphs and parts of paragraphs in the amended complaint, and to redraft the complaint in accordance with his order. The record states that there was no appeal from such order, and that the plaintiff complied therewith.

In the amended complaint, plaintiff sets forth two causes of action. The material part of the first of these is as follows:

"That on or about the —— day of September, 1922, the defendant American Telephone & Telegraph Company, through its employee and co-defendant, John T. Saxon, entered with a number of laborers upon the premises of the plaintiff, without her knowledge or consent, trespassed upon the same, needlessly, negligently, willfully, wantonly and

with a high hand, cut and destroyed and injured honeysuckle vines, which plaintiff was growing and maintaining thereon for the purpose of protecting and beautifying her premises, also several young trees, which the plaintiff was cultivating and endeavoring to grow for ornamental and shade purposes on her premises."

The second cause of action charged delicts against the defendants, as follows:

"That the said defendants, through the defendant Saxon, acting for himself and his co-defendant, and within the scope and line of his duties, as plaintiff is advised and believes, came to and upon the premises and into the home of the plaintiff, without her previous knowledge and without her consent, on or about the 12th day of October, 1922, stating that he came by direction and authority of his co-defendant, and in response to the complaint lodged by the plaintiff, and then and there, the plaintiff being alone, as defendant knew and ascertained, except for a child two years old, willfully and wantonly cursed, abused, and threatened the plaintiff and her husband for a considerable length of time, terrifying the plaintiff, causing her serious and severe nervous shock and serious injury to her health."

The complaint also contains general allegations that the acts, wrongs, and trespasses on the part of the defendants were negligent, willful and wanton, and that thereby the plaintiff suffered actual and punitive damages.

While the defendants filed separate answers, these pleadings set forth practically the same matters, as follows:

(1) An admission that the defendant Saxon was a lineman of his co-defendant, American Telephone & Telegraph Company.

(2) That any acts done by the defendants in clearing the right of way of the telephone company were done under a certain grant from the predecessor in title of the plaintiff (this grant is set forth hereinafter), and as such were properly incident to the exercise of the right to construct and

maintain a telephone line in accordance with the terms of the said grant.

(3) That the line of the telephone company was constructed and maintained along and in front of the premises of the plaintiff for an uninterrupted period of more than 20 years, and prior to the acquisition of the premises by the plaintiff.

(4) A general denial of all the allegations of the complaint not admitted.

The cause came on for trial in the Court of Common Pleas of Richland County, before his Honor, M. L. Bonham, Circuit Judge. There was a non-suit as to the second cause of action. The verdict was in favor of the defendants as to the first cause of action. The plaintiff has appealed to this Court from results as to both causes of action.

The grant referred to hereinbefore, introduced in evidence by the defendants, was as follows:

"$2.50.   Received of the American Telephone & Telegraph Company of South Carolina, two and 50/100 dollars in consideration of which I hereby grant unto said company, its successors and assigns, the right to construct, operate and maintain its line over and along the property which I own, or in which I have any interest, in the County of Richland and State of South Carolina, including the necessary poles and fixtures along the roads, streets, or highways adjoining the property owned by me in said county, said sums received in full payment for such right, and in full satisfaction for the trimming of any trees along said lines necessary to keep the wires cleared at least eighteen inches, and with the right to set the necessary guy and brace poles, and attach to trees the necessary guy wires. Covering damage to timber in constructing the line.

"Witness my hand and seal, this 5th day of June, A. D. 1899, at Columbia, S. C.

"H. H. Dent (Landowner).  (L. S.)
"Witness:  H. S. Hanner."

There are 15 exceptions.  The appellant's attorneys have grouped these.  Without setting them out *seriatim*, we will follow somewhat the grouping made.

Two of the exceptions relate to the Court's ruling as to certain testimony offered by the plaintiff as to alleged declarations made by L. T. Shanklin and W. H. Craig, regarding conduct of the defendant Saxon prior to the occurrences alleged in the complaint in this action, with persons other than the plaintiff.  It appears that this testimony was admitted as a part of the plaintiff's case in chief. The presiding Judge stated at the time that he would strike it out if it was not properly connected up thereafter.  Later, on motion of the defendants, over the objection of the plaintiff, this testimony was struck out.  About the close of the reply testimony of the plaintiff, her counsel moved the Court for withdrawal of the former order, striking out the testimony, and for the privilege of re-offering it; but the Court adhered to the opinion that the testimony was incompetent. In our opinion, when this testimony was first offered it should not have been admitted, for at the time there was no proper proof that Messrs. Shanklin and Craig were agents of either of the defendants with authority to speak for them, or either of them.  The plaintiff having failed to show in her testimony the necessary foundation for the admission of the alleged declarations, the Court was correct in the order that the testimony be struck out.

But it appears to us that the defendants themselves proved what the plaintiff had failed to establish, that Shanklin and Craig were both agents of the defendant American Telephone & Telegraph Company.  Both Shanklin and Craig so testified, as witnesses for the telephone company.  There was no testimony, however, that either of them had authority to act for the defendant Saxon, and to make any declaration which would be binding upon him; therefore,

the alleged declarations were certainly incompetent as to Saxon.

The rule, as laid down in this State, as to declarations on the part of an agent, which can be used against his principal, is that it must be shown either that such declarations were a part of the *res gestae,* or that they were made while the alleged agent was acting in the course of his authority. The declarations here, claimed to have been made, could not be admitted as a part of the *res gestae.* They were not made by the agent who was alleged to have committed the tort. They were made several weeks after the alleged occurrence by other agents. They did not concern the alleged delicts of either of the defendants.

Were they admissible against the telephone company, under the theory that Shanklin and Craig were, at the time of the making of the declarations, acting within the scope of their authority as agents of that defendant? The testimony of Shanklin and Craig shows that they were sent by their principal to make an investigation of the complaint of the plaintiff, of which the company had received notice. They gave their versions of the conversations. · According to plaintiff and her husband, the declarations, sought to be introduced, were made at the time of the identical conversations related by Shanklin and Craig. The respondents take the position that the refusal to permit the evidence, when it was re-offered, was within the discretion of the Trial Judge, because the evidence might have been offered in chief. It is true the authorities hold that it is within the discretion of the Court to allow or to refuse the introduction of evidence in rebuttal, which should have been offered in chief. *Brice v. Miller,* 35 S. C., 537; 15 S. E., 272; *Sims v. Jones,* 43 S. C., 91; 20 S. E., 905; *Bowling v. Mangum,* 122 S. C., 179; 115 S. E., 212. We do not think the matter of the discretion of the Court, however, should be considered here, for the reason that the plaintiff had offered this evidence in chief; it·had been received and was

afterwards stricken out.   It appeared when the testimony
had been connected, in that the defendants had shown that
Shanklin and Craig were agents of the telephone company,
the plaintiff did all she could when the testimony was re-
offered.   Still, it is our opinion that the Court, under all the
circumstances, was right in his holding that the particular
declarations, which plaintiff sought to have introduced, were
incompetent.   These declarations related entirely to alleged
past conduct of the defendant Saxon.   They had no bear-
ing upon any of the matters between the parties in the cause.
In addition, the expressions, alleged to have been used by
Shanklin and Craig, were more in the nature of their
opinions of Saxon than statements of fact.

Many of the exceptions complain of error in the charge
of the Presiding Judge to the jury, and in his refusal to
charge certain requests of the plaintiff.

The Court refused to charge to follows :

4    "The owner of an abutting lot is entitled to actual
punitive damages for willful and needless destruction
of shade trees, even on a sidewalk."

We do not find in the record any evidence, which made
the requested charge applicable to the case.   Even if a re-
quest to charge contains a sound proposition of law, un-
less there is some testimony in the cause to which it is ap-
plicable, it would be improper for the Court to state the
legal proposition to the jury.   It is sometimes difficult for
juries to understand the legal propositions which are ap-
plicable in a cause heard by them.   If the Court would un-
dertake to charge legal propositions inapplicable to the issues
involved, the result would be to confuse and mislead the
jury.

As requested by the defendants, the Court charged
5, 6   the following:

"That the consideration paid for such property is
conclusively presumed to cover all damages to the premises
for which the owner could have obtained compensation in

condemnation proceedings, and this includes damages of every kind arising from the enjoyment and use for the corporate purposes of the right of way granted, where the conduct of the corporation and the exercise of the use is characterized by the exercise of due care."

To this request was added the following, in the Court's own language:

"Now, I have added that this relates to the right of way covered by the grant. And it means this: That under that grant they would have had the same right as if they had condemned that property after a suit"

The proposition advanced by the defendants is sustained under the authority of *Nunnamaker v. Columbia Water Power Co.,* 47 S. C., 485; 25 S. E., 751; 34 L. R. A., 222; 58 Am. St. Rep., 905. The holding of that case was reaffirmed in *Sutton v. Catawba Power Co.,* 101 S. C., 154; 85 S. E., 409.

The appellant alleges that the charge of the presiding Judge was prejudicial to her cause, for the reason that he improperly submitted to the jury therein the question of prescriptive right. Two contentions are made as to the charge along this line. The first is that the defendants having set up a claim by grant, and having offered the grant in evidence, they could not also claim by prescription. The second is to the effect that there was no evidence offered tending to establish the prescriptive right claim. We cannot hold that the Circuit Judge committed prejudicial error in his charge, as complained, for two reasons appearing in the record: The first of these is that the defendants pleaded prescription in their answer, and, without objection, this part of the answer remained in the case throughout the entire trial. Secondly, if there was no evidence of such adverse holding to sustain the defense of the prescriptive right, claimed by the defendants, we think the attention of the Court should have been called thereto. The plaintiff submitted numerous requests. When the Court had passed

upon all of these, direct inquiry was made of counsel for plaintiff, if it was desired that anything else be stated to the jury, and the counsel replied: "No, Sir; that covers everything." If the Court inadvertently charged legal principles, which were not responsive to the testimony in the cause, but bore directly upon the issues as made by the pleadings, we think counsel should have called the attention of the Court to such inadvertence. It is the duty of the Judge to let the jury know the issues involved in a case, and the proper place for him to get such information as to these issues is from the pleadings of the parties. In a long trial, the Court may overlook the fact that some matter alleged in the pleadings has not been sustained by any evidence. The attorneys engaged in the cause, much more familiar with the facts than the Judge could possibly be, should call the attention of the Court to matter pleaded, which is not supported by any testimony.

Error on the part of the Circuit Judge is set forth because of the following words, which he used in his charge:

"She must prove to you not only the actual entrance upon the land, but having alleged that it was done needlessly, negligently, willfully, wantonly, and with a high hand, those allegations must be proved to your satisfaction by the preponderance of the evidence."

At first reading, the words quoted, considered alone, without reference to other parts of the charge, would indicate that the trial Judge committed harmful error. In order for plaintiff to recover actual damages, she only had to establish a trespass or negligence on the part of the defendants. For her to recover punitive damages, she, of course, had to go further and show that the acts of the defendants were of such character as to evidence more than a simple trespass or mere negligence. The language quoted from the charge of the Judge indicated that the plaintiff, in order to recover at all, was required not

only to show that the entrance by the defendants was negligent, but that such entrance was made "willfully, wantonly, and with a high hand." We do not think, however, that the language complained of in the charge, considered with other expressions of the Judge given in his charge, was harmful to the plaintiff, or confusing to the jury. The words quoted were near the first part of his Honor's charge. He started out in his charge by informing the jury as to the issues before them for decision. It will be noted that the language used was substantially the allegations contained in the plaintiff's complaint. Just before using this language, the Judge referred to the allegations of the complaint. Later on in the charge, the Court distinguished between negligence and willfulness, and instructed the jury fully as to the two classes of damages asked for by the plaintiff. In the very last statement he made to the Jury, in giving instructions as to the manner of writing their verdict, we think he again made clear the difference between actual and punitive damages.

The motion for nonsuit, as to the plaintiff's second cause of action, was granted by the Circuit Judge for two reasons, announced by him, as follows: (1) That the words used by Saxon were not actionable under the circumstances developed; and (2) that when Saxon uttered these words he was not acting within the scope of his duty, which the telephone company employed him to perform. The granting of this motion is alleged to have been error, and is made the basis of several exceptions.

Touching the inquiry as to whether the nonsuit should have been granted on the second ground given by the Court, we find the following laid down as general principles in *Corpus Juris:*

"So long as the servant has done some act in furtherance of the master's business, he will be regarded as acting within the scope of his employment, although he may have exceeded his authority." 39 C. J., 1283.

"So also the act may be within the scope of the employment although it is not necessary for the proper performance of the servant's duty to the master, or although it is not in the interest of the master, or even in furtherance of his business, or although it even may be an obstruction and hindrance to the master's business." *Id.*

"Where it is doubtful whether a servant in injuring a third person was acting within the scope of his authority, it has been said that the doubt will be resolved against the master because he set the servant in motion, at least to the extent of requiring the question to be submitted to a jury for determination" 39 C. J., 1284.

Turning to our own decisions, we find two which we think confirm the principles quoted from *Corpus Juris.* In *Simmons v. Okeetee Club,* 86 S. C., 73; 68 S. E., 131, a case relied upon by the respondents, while a verdict in favor of the defendants was upheld by this Court in an action against the principal and its agent for damages, caused by the agent shooting the plaintiff, because the evidence was insufficient to show that the agent at the time was acting within the apparent scope of his authority, this language was used by the present Chief Justice in the opinion of the Court:

"If the testimony had shown that the shooting took place while the work of destruction was *in fieri,* the nonsuit would have been improper."

In that case, there was no testimony showing that at the time of the shooting the agent was then and there acting for his principal. The clear intimation is that, had there been any testimony to show that the agent was at the time and place acting for the principal, the nonsuit would have been improper.

In the case of *Williams v. Tolbert,* 76 S. C., 211; 56 S. E., 908, the following holding was made:

"Where the power to make seizure of personal property under a chattel mortgage after condition broken is dele-

gated to another, the manner of taking possession is incidental to the authority and within the scope of the agency, and principal is liable for any misconduct of agent in taking possession, although he acted contrary to the directions of his principal." (Syllabus.)

There was sufficient testimony to go to the jury as to Saxon being the agent of the telephone company.

As its agent, he did the work of clearing the line. In response to the plaintiff's husband's complaint, as to the manner of clearing, he went to the plaintiff's home. There was some testimony, too, to show that he went to plaintiff's home at the direction of his principal, or agents of the principal, superior in authority to Saxon, upon plaintiff's complaint that a trespass had been made upon her premises. If there was any testimony at all going to establish that Saxon was at the plaintiff's home for the purpose of seeing her with reference to the business of his principal, acting under authority of the principal, then the question, if he was at the time acting within the scope of his authority as the agent of his principal, was a question for the jury.

We find in the case some evidence that Saxon went to the plaintiff's home under the direction of the principal. Proof similar to that was lacking in the *Simmons case.* Under the *Williams case, supra,* we think that the Circuit Judge erred in the second reason, which he gave for granting the motion for a nonsuit.

Was there error as to the first ground upon which the presiding Judge based his reasons for granting the motion for the nonsuit upon the second cause of action? The ground stated was that the words used by Saxon were not actionable under the circumstances developed.

In the second cause of action there is no allegation that the defendant Saxon committed any kind of assault upon the person of the plaintiff. The allegations are that he came upon the premises and into the house of the plaintiff without her consent, and that he willfully and wantonly

cursed, abused, and threatened the plaintiff; and the acts and conduct of the defendants are alleged to have been "wrongs and trespasses."

Of course, in the discussion of the nonsuit, the testimony of and in behalf of the plaintiff, and all legitimate inference drawn therefrom, must be taken as true; and it is but just to the defendant Saxon to say that he denied all charges of improper conduct. Nothing that may be said, therefore, can preclude or prejudice the unbiased judgment of the jury upon the issue involved.

The plaintiff's account of the interview with Saxon, in support of her claim, was substantially this:

That Saxon came to her home and knocked at the door. She answered the call. Saxon asked for Mr. Matheson and was told that he was not in. He referred to the complaint that shrubbery had been cut, stating that he represented the telephone company. He then said: "By G———, I want to know what you are raising so much h——— about the G——— d——— shrubbery I cut?" She replied: "We are not raising any sand; you go and talk to Mr. Matheson." That all this time he was like a wild animal in a cage, with his hand on the door facing over her head. That she told him that he did not have any right to come in her front yard and cut her shrubbery. He said: "Yes, I have got a right to cut what I d——— please." That she said: "If you had been what you ought to have been and not acted so rascally, you wouldn't have cut what you did of my trees and shrubbery." That he then got more furious and said, "D——— you, I will cut that d——— tree out there," referring to a tree about 9 feet from the porch and 29 feet from the road. That at this point she broke down from fright and nervousness. That Saxon stayed there 10 or 15 minutes after she told him to leave. That in consequence of his language and conduct, she went to bed and suffered serious bodily

injury, having to go to a hospital for an operation. That her health has constantly declined from that time

While it is true that the agent Saxon had the unquestioned right, "without her previous knowledge and without her consent," to legitimately investigate the cause of the complaint which had been registered, and to enter the porch of the plaintiff's home and announce his presence in the usual way, he had no right, after his legitimate entry, to rudely disturb the peace and quiet of that home. And he had no right to remain there, after being requested to leave. A jury might infer that, from the precipitate opening of his tirade, he had not entered with the *bona fide* purpose of investigation, but employed that as a cloak for the sinister purpose indicated by his conduct and language If so, he was a trespasser *ab initio* upon the premises of the plaintiff; and this is the legitimate cause of action which springs from the conduct and language of Saxon, if established by evidence.

The respondents point us to two cases in support of their view that the trial Judge was right in his conclusions, namely, *Rankin v. Railway,* 58 S. C., 532; 36 S. E., 997, and *Brooker v. Silverthorne,* 111 S. C., 553; 99 S. E., 350; 5 A. L. R., 1283.

In *Rankin v. Railway Co., supra,* the plaintiff claimed that the defendant's agent came upon her premises and threatened to cut down some trees of great value and beauty, and that when she requested them not to do so, the defendant's foreman "cursed [her] this plaintiff and ordered her to get away from there or he would put her in the penitentiary, and threatened to strike her, * * * she being an old woman, and otherwise maltreated and abused her to her great damage." Upon demurrer to the complaint, the Circuit Judge construed it to contain two causes of action, a cause of action for trespass upon real estate, and a cause of action for trespass upon the person of the plaintiff. After sustaining the demurrer as to the first cause of action,

trespass upon real estate, the Circuit Judge, whose decree was in all respects approved by the Supreme Court, considered the demurrer as to the second cause of action, trespass upon the person, and said that the allegations "do not in any way allege an actionable act or assault against plaintiff or injury of any kind to her person or her character which is actionable. * * * If Rutledge had been the agent of a common carrier of passengers, and plaintiff had been a passenger, under the contractual relation of carrier and passenger to safely carry her, etc., and while being transported as a passenger, Rutledge, as the agent of defendants, had addressed her as stated in the complaint herein, his curses, threats, etc., would have created a cause of action against the railroad company. The complaint does not allege the existence of any contractual relation between plaintiff and defendant. * * * Further the other elements of damage alleged by plaintiff in her complaint, in the nature of threats and abuse on the part of Rutledge, as the agent of defendants, are not actionable, for the reason that they were not within the scope of his employment, even had they been assaults and batteries and other personal enormities; but they were threats and abuse, and while immoral, are not actionable in law" The Supreme Court in affirming the decree said:

"If the complaint may be treated as one for trespass upon the person, no assault upon the plaintiff is alleged, and mere words under the circumstances stated would not be civilly actionable."

In the case of *Brooker v. Silverthorne,* 111 S. C., 553; 99 S. E., 350; 5 A. L. R., 1283, the plaintiff alleged: That she was night operator at the telephone exchange at Barnwell. That defendant called over the 'phone for a certain connection. That she promptly tried to get it for him. That upon her failing to do so, he cursed and threatened her in an outrageous manner, saying, "You G——— d—— woman, none of you attend to your business." That she

tried to reason with him, telling him she had done all she could to get the connection he wanted, but that he continued to abuse and threaten her, saying: "You are a G——— d——— liar If I were there, I would break your 'G——— d——— neck." That the language and threat put her in great fear that he would come to the exchange and further insult her. That she was so unnerved and shocked that she was made sick and unfit for duty, and had to take medicine to make her sleep. That for weeks afterwards, when the defendant's number would call, she would become so nervous that she could not answer the call. That her nervous system was so shocked and wrecked that she suffers and continues to suffer in health, mind, and body on account of the abusive and threatening language addressed to her by defendant. A demurrer to the complaint and a motion for nonsuit were refused by the trial Judge, and a verdict was rendered for the plaintiff. Upon appeal this Court held:

"The question is whether plaintiff stated or proved a cause of action. That question was decided in the negative in *Rankin v. Railroad Co.,* 58 S. C., 532; 36 S. E., 997."

The Court quoted from the *Rankin case:*

"No assault upon the plaintiff is alleged, and mere words, under the circumstances stated, would not be civilly actionable."

The Court also adverted to the obvious distinction between the case at bar and cases involving abuse of passengers by the officers of a carrier, and concludes the opinion with these words:

"The language attributed to defendant—especially when used by a man to a woman—merits severest condemnation and subjects the user to the scorn and contempt of his fellowmen. But it is not civilly actionable. Diligent search has failed to discover any case or authority to the contrary, but many in support of the conclusion which we have reached."

In our opinion, the case at bar contains certain features which entirely distinguish it from the *Rankin* and *Silverthorne cases.* It comes more within the principles announced in *Jones v. A. C. L. Railway Co.,* 108 S. C., 217; 94 S .E., 490, and *Buchanan v. Telegraph Co.;* 115 S. C.,433; 106 S. E., 159; 18 A. L. R. 1414. In the Rankin Case no right of the plaintiff, either real or personal, had been invaded; the only right she claimed was trespass upon her real estate, which was dismissed on demurrer: She relied solely upon the contention that the abusive language was actionable, which proposition the Court emphatically, both by Circuit Judge and Supreme Court, repudiated in the Silverthorne Case, there was no pretense set up of the invasion of any right outside of the matter of personal abuse; and there the Court held it not civilly actionable. In the *Jones case, supra,* the plaintiff called at the railroad depot for a package of freight, and was referred by the station agent to the colored porter, Hunter, whose duty it was to deliver the package. Hunter, engaged in a personal matter, was slow in responding to the plaintiff's request and resented the exasperated reprimand of the plaintiff; he "jumped up and started toward plaintiff, cursing him and applying to him epithets too vile and approbrious to repeat, and threatened to kick him out of the depot. Plaintiff, being an old man and having nothing with which to defend himself against the threatened assault, hurried out of the depot and did not go back, but sent a drayman in to get his package." The Court decided the case specifically upon this ground:

"Plaintiff was where he had a right to be in the pursuit of a lawful purpose, and when he was driven away by defendant's servant, under threat and fear of personal injury, without reasonable cause, his legal right was invaded, and, under the principle above stated, he was entitled to recover some damages to protect and vindicate his right."

It seems perfectly plain to us that the Court did not sus-

tain the action upon the ground that the cursing was actionable, but upon the ground that the plaintiff's legal right to be at the depot and call for his package had been invaded by the rough treatment of the porter. This case does not refer to the *Rankin case,* and was, as has been shown, decided upon an entirely different principle of law.

In the case of *Buchanan v. Western Union Telegraph Company, supra,* plaintiff sued the telegraph company, alleging that the messenger boy of the company, who came to her home on business ·for the company, made an indecent proposal to her. This case may be, and we think is, sustained upon the same principle as that declared by the Court in the *Jones case;* in fact, the opinion specifically so states; and that is, not that the words used were actionable, but that the right which the plaintiff had to the quiet, undisturbed, enjoyment and possession of her home was invaded by the agent of the telegraph company; in effect, that a trespass had been committed upon her home. No reference is made in the opinion of this case to the holdings in the *Rankin* or *Silverthorne cases.*

Comparing, then, the two cases of Rankin and Silverthorne, on the one hand, with the *Jones* and *Buchanan cases,* on the other hand, it appears to us perfectly clear that where there is no invasion of a personal or property right, only abusive language, the rule in the first two cases applies; but when such invasion appears, as in the two last-mentioned cases, the rule declared therein is applied   The facts in the case at bar, as alleged by the plaintiff, and testified to by her, bring this case within the rule of the *Jones* and *Buchanan cases.* Consequently, it is our opinion that the order of nonsuit was improper.

The judgment of this Court is that the result of the case as to the first cause of action be, and the same is hereby, affirmed; and that the order of nonsuit, as to the second cause of action, be reversed, and the case be remanded to

the Court of Common Pleas for Richland County for trial as to that particular cause of action

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, COTHRAN and STABLER concur. .