DAVENPORT v. CHARLESTON & WESTERN CAR. RY.

NEGLIGENCE.—A RAILROAD company is not liable for damages to the inmates of a dwelling caused by bricks thrown at it by its servants from a moving freight train.

Before WATTS, J., Laurens, February, 1905. Reversed.

Action by Martha Davenport against Charleston and Western Carolina Ry. From order overruling demurrer, defendant appeals.

*Messrs. S. J. Simpson* and *Cooper & Simpson,* for appellant. *Mr. Simpson* cites: 37 S. C., 199; 5 Rich., 28; 3 S. C., 8; 13 S. C., 17; 37 S. C., 199, 380; 38 S. C., 29; 58 S. C., 541, *145; 38 L. R. A., 668; 56 L. R. A., 749.

*Messrs. Simpson & Cooper* cite: *In addition to citations by their associate:* 58 S. C., 144; 1 Rorer on R. R., 1192; 26 Ind., 70.

*Messrs. F. P. McGowan* and *R. E. Rabb,* contra (oral argument).

July 25, 1905. The opinion of the Court was delivered by
MR. JUSTICE JONES. In my view, the appellant's exceptions should be sustained. In the case of *Rucker* v. *Smoak,* 37 S. C., 377, 380, 16 S. E., 401, the Court very clearly states the rule which governs the liability of a principal for the acts of his servants, in this language: "When one person invests another with authority to act as his agent for a specified purpose, all the acts done by the agent in pursuance or within the scope of his agency are and should be regarded as really the acts of the principal. If, therefore, the agent, in doing the act which he is deputed to do, does it in such a manner as would render him liable for exemplary damages, his principal is likewise liable, for the act is really done by him."

Accordingly, in *Skipper* v. *Mfg. Co.,* 58 S. C., 143, 36 S. E., 509, the complaint was held to state a cause of action against the defendant in alleging that its engineer, while in charge of and running defendant's dummy engine, maliciously blew the whistle in close proximity to plaintiff's mule, thereby causing it to run away and overturn plaintiff's buggy, throwing her out, to her damage. In that case the engineer had control of the engine, and the blowing of the whistle was a part of its operation, so that he was acting within the scope of his agency.

In the case of *Polatty* v. *Railway Co.,* 67 S. C., 391, 45 S. E., 932, a nonsuit was denied because the evidence tended to show a case in which the defendant's engineer, in charge of its engine, threw coal at a trespasser upon the tender or platform adjoining, for the purpose of ejecting him, thereby causing him to fall and be injured. Here the tortious act of the engineer was done in protecting, in an improper manner, the property of his principal placed in his charge, from a trespasser, and so was clearly within the apparent scope of his agency.

The present complaint cannot be made to fall within the rule stated. It is true the complaint states that the tortious act complained of was done by the servants of the defendant, *"While in the employment of the defendant and in the discharge of their duties on said train,"* but the other facts alleged in the complaint must be considered in determining the meaning of these words, in so far as they may be construed as alleging facts rather than conclusions of law. The fact that the defendant's servants were in its employment at the time of committing the acts complained of has no tendency to show that the acts were within the apparent scope of their agency, and it may be conceded that on the occasion of the injury complained of the said servants were in the general discharge of their duties on the train, and still the complaint would fall short of stating that the particular acts complained of were performed in *pursuance* or *in the discharge* of some duty which would make the throw-

ing of a brick at another within the scope of that duty. Facts should be stated in the complaint from which the Court could reasonably infer that the particular tortious act was performed within the scope of the employment of the agency. The plaintiff was not a passenger, so as to be under the protection of the defendant's servants, nor a trespasser, so as to call upon the servants to protect the principal's property. The only agency alleged is that the defendant's servants were in control of defendant's freight train. It is not suggested in the complaint that the train was freighted with brick, and that the alleged injury happened while the servants were unloading, but, on the contrary, it appears that the train was on its journey and that the brick or stone was deliberately thrown, being *aimed* at the plaintiff's dwelling. It is inconceivable that it could be within the scope of such an agency, the control and operation of a freight train, to rock plaintiff's dwelling house as the train passed along, when she was in no wise interfering with the train's operation. If it was intended to allege a case in which the defendant company ordered its servants to throw stones at plaintiff's dwelling, the allegations should have been framed with that view.

In the case of *Cobb* v. *Railway Co.,* 37 S. C., 198, 15 S. E., 878, this Court granted a new trial because the Circuit Court instructed the jury that if the shouting of the train hands caused the runaway of the plaintiff's horse, to his injury, the defendant company was liable. These train hands were in the employment of the company, and on the train in the discharge of their duties, but the particular act of shouting or making a noise had no conceivable reference to the management or operation of the train or the performance of any of their duties as train hands.

For these reasons, I think the judgment of the Circuit Court should be reversed.