## 10513

### BUCHANAN v. WESTERN UNION TELEGRAPH CO.

#### (106 S. E. 159)

TELEGRAPHS AND TELEPHONES—TELEGRAPH COMPANY LIABLE FOR MESSENGER'S INDECENT PROPOSAL.—A telegraph company through which plaintiff's husband sent money to plaintiff was liable for the act of its messenger, delivering the money, in making an indecent proposal to plaintiff.

Before PRINCE, J., Greenwood. April, 1919. Reversed.

Action by Mrs. Lula Buchanan against Western Union Telegraph Co. From directed verdict for defendant the plaintiff appeals.

*Messrs. J. Wm. Thurmond and Tillman & Mays,* for appellant, cite: *Defendant a common carrier*: Art IX, Sec. 3, Const, 1895. *Liability of defendant for act of messenger boy*: 108 S. C. 217; 94 S. E. 490; 59 S. E. 189; Jones Tel. & Tel. 236; 77 S. C. 546; 79, Miss. 632; 89 A. S. R. 663; 15 A. S. R. 757; 73 Miss. 161.

*Messrs. Grier, Park & Nicholson and John Gary Evans,* for respondent, cite: *Act was outside of scope of employment and master not liable*: 5 Rich. L. 17; 37 S. C. 199;

37 S. C. 377; 86 S. C. 73; 13 S. C. 18; 65 S. E. 532; 108 S. C. 184; 58 S. C. 143; 99 N. Y. Supp. 300. *Tort was not committed as a means of performing work which he was employed to do*: 270 Mo. 676; L. R. A. 1917 F, 489. *Plaintiff forgave defendant's conduct which released the master*: 99 Ark. 344. *Act could not be legally delegated nor ratified*: 21 R. C. L. Sec. 104; 20 Ill. 168; 108 S. C. 184; Cooley Torts, p. 127; Story on Agency, Sec. 455; 154 Mass. 330; 13 L. R. A. 219; 26 Am. St. Rep. 249.

October 12, 1920.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for damages. The plaintiff lived, at the time set up in the complaint, in Greenwood, in this State. The plaintiff's husband was working in Columbia, and sent to his wife, through the defendant company, $11.50. The agent of the defendant sent a check for the money to the plaintiff by one of its regular messengers. The messenger found the plaintiff at home alone. While the plaintiff was in the act of signing the receipt the messenger is alleged to have made an indecent proposal to her. There is also evidence that the plaintiff offered to strike the messenger, but the messenger at first advanced towards the plaintiff, and then seized the receipt and ran away. The question is the liability of the defendant for the conduct of its messenger.

At the close of the testimony the defendant moved for a direction of a verdict in its favor. The presiding Judge directed the verdict for the defendant, but said, "I am rather disposed to think that it is a step that the law ought to take, but it hasn't taken yet." The majority of this Court think that the principle has been settled.

We are unable to differentiate this case in principle from the case of *Jones v. Railroad Company*, 108 S. C. 217, 94 S. E. 490. The fact that the defendant undertook to transact its business in the home of the plaintiff, instead of in its own office, makes no difference. Certainly none in favor of the defendant. It is more in keeping with the spirit of the law to protect the homes of the people than railway, express and telegraph offices. A consignee may send another to get his freight as Jones did. The communication of the telegraph company is with the person to whom the message is sent. The appearance of their messenger to most people is startling. It indicates an urgent necessity for immediate action; otherwise, the mail will do. The appearance of their messenger throws caution to the winds and opens almost every door. May it admit, with impunity, a thief, a murderer, a rapist? It seems to us that it is going to the extreme limit to say that if the messenger is sent to the house of A., and he turns aside and enters the house of B., then the telegraph company is not responsible, because the transaction with B. was not within the scope of his employment. The transaction with A. is certainly within the scope of his employment, or there is no ground for responsibility for any delict. The servant in Jones' case was writing a card to his wife, which was purely private matter. The interruption of that private matter caused the difficulty. It was not within a scope of the servant's employment to write to his wife or to abuse and threaten those who came for their freight, and yet the employer was held responsible. Here the injury was inflicted while the business for which the messenger was sent was being transacted. The injury was committed in the home of the plaintiff, to which the servant of the defendant had gained admission, by reason of this very business, and inflicted in its performance.

The judgment appealed from is reversed.

JUSTICES WATTS AND GAGE concur.

MR. JUSTICE HYDRICK (dissenting.) We think the ruling was right. The law is well settled that the master is liable for the wrongful acts of his servant within the scope of his employment. The converse of the proposition is equally well settled—that the master is not liable for the conduct of his servant which is not within the scope of his employment; that is, for his servant's acts which are not done about or in furtherance of the master's business.

The conduct here complained of was entirely foreign to the master's business, or the purpose for which the boy was employed. It had no connection with or relation to the master's business, but was the boy's own personal escapade, wholly unconnected with the duty for which he was employed; and therefore as to that act he was not defendant's servant. *McClenaghan v. Brock,* 5 Rich. 17; *Simmons v. Okeetee Club,* 86 S. C. 73, 68 S. E. 131; *Knight v. Laurens Motor Car Co.,* 108 S. C. 179, 93 S. E. 869, L. R. A. 1918B, 151; Thompson on Negligence, § 525; *Savannah Electric Co. v. Hodges,* 6 Ga. App. 470, 65 S. E. 322; and authorities cited by the Court in a clear and well-reasoned opinion.

The fact that the boy was admitted to plaintiff's house because he was defendant's servant, and the fact that at that place and time he was about his master's business in delivering the money and getting a receipt for it are not determinative of the question whether his wrongful conduct was within the scope of his employment. In some circumstances time and place may be elements to be considered in determining that question, but here they are mere incidents, and the nature of the wrong complained of is the prime factor to be considered in solving the question.

MR. CHIEF JUSTICE GARY concurs.