**HENDRIX v. EMPLOYERS MUT. LIA-BILITY INS. CO. OF WISCONSIN.**

**Civ. A. No. 2633.**

United States District Court
E. D. South Carolina, Columbia Division.

June 5, 1951.

Thomas, Cain & Nettles, Columbia, S. C., Brown & Jefferies, Barnwell, S. C., for plaintiff.

Wise, Whaley & McCutchen, Columbia, S. C., for defendant.

WYCHE, Chief Judge.

This matter comes before me on defendant's motion to dismiss on the ground that the complaint fails to state a cause of action. The motion was heard upon the complaint filed in the present suit, the plaintiff's answers to certain interrogatories interposed by the defendant, the insurance policies involved, and the counterclaims presented against the present plaintiff in certain actions pending in Hampton County, South Carolina, in February, 1950. From these, it appears that from March 2, 1949, to March 2, 1951, the plaintiff herein had defendant's "Comprehensive General Liability Policy" coverage, Policy No. 820–16480BR, being in force from March 2, 1949, to March 2, 1950, and policy No. 821–16480BR, being in force from March 2, 1950, to March 2, 1951. The two policies are identical, save as to the dates of the coverage. In the basic form of the policy the insurer agrees "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident." By endorsement, the words "caused by accident" were deleted and thus the policy, as amended, provides coverage by its terms for any payment which the insured would be required to make on account of bodily injury. The policy further provides that the company shall "defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient".

In March, 1950, the plaintiff, owning certain lands in Hampton County, South Carolina, brought an action in the Court of Common Pleas for that County against a number of residents of the County to obtain a declaratory judgment in regard to the rights of the parties concerning the use of certain alleged roadways through

the plaintiff's lands. On April 5, 1950, three of the defendants in that suit filed counterclaims against the plaintiff seeking damages in the amount of One Hundred Thousand Dollars each, on account of injuries arising out of an altercation between those defendants and one Clarence Smith, who was at that time employed by the plaintiff as manager or superintendent of his lands. These counterclaims were referred to the insurer and demand made for the defense of the countersuits; the insurer refused to defend the actions which had been alleged by such counterclaims. Subsequently, the plaintiff settled the three counterclaim actions for an aggregate of Twenty Thousand Dollars, paid to the counterclaimants, and now brings suit against the defendant for the amount so paid, together with counsel fees paid in the defense of the counterclaims.

The primary issue is whether or not the defendant insurer was obligated to defend these counterclaims brought against Hendrix, the plaintiff herein. The counterclaims are all similar, and allege the citizenship of the parties and that the plaintiff was the owner of a plantation and game preserve known as "Palachucola Club"; that one Clarence Smith "was in the employ of the plaintiff, B. L. Hendrix, as manager and/or superintendent of the said Palachucola Club; and that he was employed as agent and servant to safeguard and protect it, together with the trees, game and fish which were located thereon." They further allege that on or about February 7, 1950, the counterclaimants were "met up with" by the said Clarence Smith, who "accosted (the defendants) in a hostile and threatening manner, using toward (them) violent, obscene and abusive language and without any just cause, excuse, reason or provocation, the said Clarence Smith, who was at the time in the course of his employment by the plaintiff, B. L. Hendrix, and of the actual scope and performance of his duties for and on behalf of said plaintiff, did wilfully, wantonly, feloniously, maliciously and unlawfully make an assault upon the person(s) of (the defendants) grabbing the defendant(s) with his hands and shaking (them) with great force and violence, pointed a pistol at (them), in violation of Section 1119, Volume I, Code of Laws of South Carolina, thereby causing (them) to suffer great and severe mental pain and anguish and physical suffering, causing (them) to be embarrassed and humiliated in the presence of the people present, to (their) great damage." The counterclaims also allege that at the same time and place, Smith accused defendants of trespassing, that the accusation was untrue and slanderous, and injured their reputation. The counterclaims then allege "that on the occasion of the wilful, felonious, malicious and unlawful assault upon this defendant, and the slanderous statements made against him by the said Clarence Smith, as hereinabove set out, the said Clarence Smith was, as an employee and agent of the plaintiff, B. L. Hendrix, acting under the specific and direct instructions of the said plaintiff." Thus, in substance, the counterclaims sought to recover on account of the assault and battery committed against the defendants by Smith and the slanderous remarks made by him.

An action for assault and battery is an action for "bodily injury". The policy in its original form, prior to the endorsement, shows that assault and battery was intended to be covered thereby, since it provided "Assault and battery shall be deemed an accident unless committed by or at the direction of the insured." If the policy was intended to cover assault and battery as an accidental injury, it must cover assault and battery where the requirement of accident has been dispensed with.

The defendant contends that the policies do not apply to an assault and battery "committed by or at the direction of the insured." The provision in the policy that "assault and battery shall be deemed an accident unless committed by or at the direction of the insured" is the definition in the policy of the word "accident", which was doubtless intended to forestall

any controversy as to whether assault and battery constituted injury by accidental means. Since the words "caused by accident" in the insuring agreement were deleted by the endorsement, the definition of such an "accident" is no longer significant. The policy must have intended to provide liability against any claim for bodily injury, insofar as such coverage would not be contrary to law.

It is true, as a general proposition of law, that public policy will not permit an insured to be indemnified for liability incurred by his own unlawful act. Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 4 Cir., 1949, 177 F.2d 793. It is, therefore, necessary to determine whether the counterclaims sought to recover from the plaintiff on account of his personal wrong-doing, or whether they sought to hold him for damages because of the wrong-doing of his agent, under the doctrine of *respondeat superior*. Indemnity for the latter is not contrary to public policy, because the insured in such a case is guilty of no wrong-doing, but simply has the misfortune to be legally responsible for the wrong-doing of another.

Under the South Carolina cases, liability of the master, under the doctrine of *respondeat superior,* is not established by the mere showing that an agent or servant of the employer committed the assault and battery. Simmons v. Okeetee Club, 1910, 86 S.C. 73, 68 S.E. 131; Davenport v. Charleston & Western Car Railway Co., 1905, 72 S.C. 205, 51 S.E. 677. As summarized in Courtney v. American Railway Express Co., 1922, 120 S.C. 511, 113 S.E. 332, 334, 24 A.L.R. 128, "In order to hold the master liable for the tort of his servant, the servant must have been at the time engaged in the discharge of duties intrusted to him in reference to the particular matter in hand and acting within the apparent scope of his employment."

The allegation in the counterclaims to the effect that Smith was "acting under the specific and direct instructions" of the plaintiff on the occasion referred to, reflects the intention on the part of the pleader to state a cause of action against Hendrix under the doctrine of *respondeat superior* rather than a suit against Hendrix for his own wrong executed by another. No intentional wrong-doing on the part of Hendrix is alleged by the counterclaims and there is no allegation to the effect that he directed or instructed Smith to assault the counterclaimants. The allegation that "on the occasion of" the assault, Smith was "acting under the specific and direct instructions of the said plaintiff" is no more than saying that Smith was instructed to keep off intruders, in the course of which duties Smith committed the tort complained of. The tort complained of was the tort of Smith, the agent; and the liability of Hendrix rests only upon the relationship of principal and agent. Other than that, it does not appear from the counterclaims that the plaintiff was in any wise connected with the tort for which damages were sought to be recovered. It is not contrary, therefore, to public policy to require the insurer to indemnify the plaintiff against any liability incurred as a result of the assault and battery alleged in the counterclaims. 7 Appleman, § 4252; and see, New Amsterdam Casualty Co. v. Jones, 6 Cir., 1943, 135 F.2d 191. Nor is it contrary to public policy to require the insurer here to defend the insured against the suit brought for the assault and battery.

The insurer was by its contract required to defend the plaintiff against the action for assault and battery. The counterclaims contained, in addition to the allegations of assault and battery, allegations sounding in slander. Assuming that the insurer was not required to defend the action for slander (on the theory that slander is not bodily injury), the obligation remained upon the insurer to defend the entire action so long as there remained in the action allegations of a cause for which the insurer would be required to indemnify. For breach of

88

this obligation to defend, the insurer would be liable for the damages sustained by the insured as a result of the insurer's refusal. London Guarantee & Accident Co. v. Shafer, D.C.Ohio, 1940, 35 F.Supp. 647; Boutwell v. Employers' Liability Assurance Corp., 5 Cir., 1949, 175 F.2d 597.

I have, therefore, concluded that the complaint in this case states a cause of action against the insurer for damages sustained as a result of the insurer's refusal to defend the counterclaims presented against the plaintiff in the actions described in the complaint, which counterclaims the insurer was, under the terms of the policy, required to defend.

■ This disposes of grounds (a), (c), (d) and (i) of the motion to dismiss. Grounds (b), (e), (g) and (h) raise the contention that the indemnity provisions of the policy cannot be invoked because the counterclaims were compromised instead of being allowed to go to judgment. It is well settled that an insured can effect a settlement and sue for reimbursement when an insurer wrongfully refuses to defend the action against him, even though the policy prohibits settlements without the consent of the insurer. 8 Appleman, page 87.

■ Ground (f) of the motion relies upon violation by the plaintiff of the policy requirement that notice of the claim should be given "as soon as practicable", and all processes forwarded "immediately" to the insurer. While unreasonable delay might be a defense, it must be alleged and proven as a defense. On the basis of the record at present, I am not in a position to hold that there has not been reasonable compliance with the policy provisions.

I, therefore, conclude that the complaint states a cause of action for breach of the obligation that was upon the defendant to defend the counterclaim actions, and the motion to dismiss is, therefore, denied; the defendant is given twenty days in which to file answer, and

It is so ordered.