**Lola RABON, Appellee,**

v.

**GUARDSMARK, INC., Appellant.**

**No. 76–2398.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 9, 1977.

Decided Feb. 16, 1978.

Stephen G. Morrison, Columbia, S. C. (John U. Bell, III, Nelson, Mullins, Grier & Scarborough, Columbia, S. C., on brief), for appellant.

Dallas D. Ball, Columbia, S. C. (Hammond A. Beale, Columbia, S. C., on brief), for appellee.

Before WINTER, RUSSELL and HALL, Circuit Judges.

WINTER, Circuit Judge:

In this diversity action, plaintiff, an employee of the Hewitt-Robins Division of Litton Industries, sued Guardsmark, Inc. (Guardsmark), a corporation engaged in the private security business, for damages resulting from a sexual assault upon her by one of its guards while she was working at a building that Guardsmark had been employed to protect. The district court granted summary judgment as to liability, and awarded plaintiff $300,000, the amount that the parties agreed were her monetary damages. Guardsmark appeals, and we reverse.

I.

The incident out of which this litigation arose occurred on Sunday, January 19, 1975. The facts relating to liability were stipulated: On that date, Melvin Thomas Roberts was employed by Guardsmark as a security guard and he was assigned to the Hewitt-Robins plant to provide protection for the plant and its employees. He was armed

with a loaded .38 caliber pistol for which he was duly licensed by the South Carolina Law Enforcement Division pursuant to his employment as a security guard by Guardsmark.

Plaintiff, a payroll clerk, was working that night together with her supervisor, the general accounting manager at Hewitt-Robins. When the two were leaving the building at the conclusion of their duties, plaintiff discovered that she had left her automobile keys behind and she returned to get them. The supervisor, however, left, so that when plaintiff returned, she and Roberts were the only persons in the building. Roberts forcibly assaulted and raped the plaintiff at gunpoint. Plaintiff claims that the assault rendered her unable to continue her employment and caused her other grievous physical and psychological injuries. She has recovered the Workmen's Compensation benefits fixed by South Carolina law.

Faithful to the precepts of *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the district court looked to the law of South Carolina to determine if Guardsmark was liable to plaintiff. It held that the facts of the case did not bring it within the doctrine of *respondeat superior,* but it concluded, under the law of South Carolina, that a security guard company such as Guardsmark would be held to the higher standard of care which South Carolina law imposed on common carriers. This standard of care was clearly breached, in the opinion of the district court, by the assault upon the plaintiff. The district court's prediction that South Carolina law would treat security guard companies the same as common carriers was based largely upon the extensive statutory regulation of private security companies contained in the South Carolina Private Detective and Private Security Agencies Act, S.C.Code § 56–646.1 et seq. (1975 Cum.Supp.).

## II.

The parties agree, as did the district court and as do we, that under the doctrine of *respondeat superior,* as traditionally applied in South Carolina, Guardsmark was not liable for Roberts' intentional tort. *Lane v. Modern Music, Inc.,* 244 S.C. 299, 136 S.E.2d 713 (1964); *Adams v. South Carolina Power Co.,* 200 S.C. 438, 21 S.E.2d 17 (1940); *Courtney v. American Ry. Express Co.,* 120 S.C. 511, 113 S.E. 332 (1922). The assault by Roberts was manifestly not in furtherance of Guardsmark's business; it was the converse of Guardsmark's purpose—that of providing protection and that for which it was employed. The assault was to effect Roberts' independent purpose, and it was not within the scope of his employment. The mere fact that the tort was committed at a time that Roberts should have been about Guardsmark's business and that it occurred at the place where Roberts was directed to perform Guardsmark's business does not alter these conclusions. *Davenport v. Charleston Western Carolina Ry. Co.,* 72 S.C. 205, 51 S.E. 677 (1905).

The basis on which the district court found liability,[1] the correctness of which plaintiff urges on appeal, is that South Carolina, as it has done in cases involving common carriers, would hold Guardsmark responsible for an intentional tort of its employee, at least when the tort was committed at the place where Guardsmark directed Roberts to carry out its business and the tort was committed by use of the gun which

---

1. The district court decided the issue of liability in an oral opinion. It gives us little aid in deciding this appeal. It contains no citation of authority except a passing reference to a case that can be identified only by reference to the argument of counsel. Much of what the district court said in its opinion can be interpreted only by its colloquy with counsel prior to its discharge of the jury which had been impanelled to try the case and assess damages before it was known that the district court would decide liability summarily and the parties would agree as to damages. An issue of the novelty, closeness and importance to the parties which this appeal presents was deserving of fuller treatment. While we normally accord significant weight to a district judge's interpretation of the law of the state in which he sits, *see Williams v. Weyerhaeuser Co.,* 378 F.2d 7, 8 (4 Cir. 1967), we cannot do so under the circumstances described.

Guardsmark supplied to enable Roberts to carry out its business. The view of the case taken by the district court is not unknown to the law. The principle it apparently invoked is set forth in Restatement (Second) of Agency § 214 (1958), where it is said:

> **Failure of Principal to Perform Non-delegable Duty**
>
> A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty.[2]

■ The fact that the view of the law taken by the district court is in the mainstream is only the beginning of the case, not its solution. Under *Erie*, our function in this diversity case is to determine how the case would be decided under the law of South Carolina, not how it might be decided under the law of another, albeit equally respected, jurisdiction, nor under our independent views of the merits of the controversy. Thus our inquiry is directed to South Carolina's recognition of the principle of non-delegable duties, whether South Carolina has recognized a non-delegable duty of due care on the part of a private security guard enterprise and, if not, what is our informed prediction as to whether South Carolina would recognize a non-delegable duty of due care on the part of persons engaged in such an activity.

### III.

■ South Carolina has recognized the non-delegable duty exception to the general rule of *respondeat superior* in a number of cases. *Jones v. Atlantic Coast Line R.R.*, 108 S.C. 217, 94 S.E. 490 (1917); *Buchanan v. Western Union Telegraph Co.*, 115 S.C. 433, 106 S.E. 159 (1920); *Matheson v. American Telephone & Telegraph Co.*, 137 S.C. 227, 135 S.E. 306 (1926). A precise understanding of the rationale of these cases is not free from doubt because the basis of decision of each is not clearly articulated. Nevertheless, we note that the defendant in each was a common carrier[3] and was therefore subject to a stringent standard of care toward those with whom it dealt.[4] Indeed,

---

**2.** *Comment* (a) to § 214 is helpful. In pertinent part, it says:

> Unless one has directed a specific tortious act or result, or has been negligent, he is normally *not* responsible for the conduct of others, except that of his agents or servants acting within the scope of their employment. By contract, however, or by entering into certain relations with others, a person may become responsible for harm caused to them by conduct of his agents or servants not within the scope of employment; the extent of this liability depends upon the duty assumed. Also, if one contracts for a result to be achieved, in accomplishing which there is a peculiar likelihood of harm to others, he may become liable for the conduct of those not his agents or servants. There are three forms of the duty of protection. First, a person may have a duty to protect another which can be performed either by exercising care personally in protecting the other or by exercising care in the employment of an independent contractor to protect the other. Secondly, there may be a duty to protect another at all hazards, a duty which is not fulfilled unless the other is protected and which is not satisfied by the use of care. This duty normally exists only when undertaken by contract. Thirdly, *one may have a duty to see that due care is used in the protection of another, a duty which is not satisfied by using care to delegate its performance to another but is satisfied if, and only if, the person to whom the work of protection is delegated is careful in giving the protection.* In this third class, the duty of care is non-delegable. (Emphasis added.)

As will be shown in the text, plaintiff's theory of liability is that this is a case to which Guardsmark, from the nature of its business, had a non-delegable duty of due care to plaintiff.

**3.** Prior to its repeal in 1971, Article IX, § 3 of the Constitution of South Carolina (1895), grouped telephone and telegraph companies with common carriers in respect to liability.

**4.** W. Prosser, Law of Torts § 70, p. 465 (1971), describes the so-called "common carrier" exception to the usual rule that a master is not liable for the "frolics or detours" of his servant, as follows:

> Even where the servant's ends are entirely personal, the master may be under such a duty to the plaintiff that responsibility for the servant's acts may not be delegated to him. This is true in particular in those cases where

the rule in South Carolina, as in other jurisdictions, is that a common carrier owes its patrons the highest degree of care. *See, e. g., Poliakoff v. Shelton*, 193 S.C. 398, 8 S.E.2d 494 (1940). Plaintiff argues that the principle supporting the imposition of this higher standard of care upon common carriers also applies to this case. But our examination of the South Carolina cases involving common carrier liability indicates that while the standard of liability is settled, the reasons for its adoption are not clear.[5] As a consequence, we lack a reasoned basis on which to conclude that the South Carolina Supreme Court would be persuaded to extend it to private security agencies.

█ We cannot agree with the district court that the South Carolina Private Detective and Private Securities Agencies Act, S.C.Code § 56–646.1 et seq. (1975 Cum. Supp.), places Guardsmark in the same category as a common carrier with respect to liability to the public for unauthorized acts of its servants. That statute merely establishes a licensing scheme. It addresses the manner of applying for a license, bonds, fees, registration of employees, firearms permits, the police powers of licensees, and the suspension or revocation of license. The civil liability of private security agencies is not mentioned.

True, the fact that the South Carolina legislature thinks it desirable to license private security agencies indicates a recognition that their activities affect the public interest. But one cannot infer from that recognition an intention to impose on them a higher standard of civil liability than that to which ordinary business enterprises are held. It is equally plausible to suppose that the legislature considered the licensing scheme an adequate safeguard for the public interest. Thus, this regulatory scheme does not evidence the legislative intention that the district court ascribed to it.

Our conclusion that the mere existence of the statute does not justify the extension of the common carrier standard of care to private security agencies is supported by the decision in *Apex Smelting Co. v. Burns*, 175 F.2d 978 (7 Cir. 1949), which exonerated a detective agency from liability for arson perpetrated by one of its guards, although its business was subject to licensing and regulation. When the licensing act was amended to impose liability on the detective agency-employer for the "good conduct" of its employees, the opposite result was reached when a security guard set a fire. *Stewart Warner Corp. v. Burns International Security Services, Inc.*, 353 F.Supp. 1387 (N.D.Ill.1973).

## IV.

A substantial factor in our decision is the usual deference on the part of the Supreme

---

the master, by contract or otherwise, has entered into some relation requiring him to be responsible for the protection of the plaintiff. The employees of a carrier, for example, would be under a duty to a passenger to exercise reasonable care to protect him against assaults on the part of third persons, even for personal motives, and they are not less under a duty to protect him against their own assaults, which is the duty of the master as well. It follows that the master will be liable even for such entirely personal torts as the rape of a passenger. The same is true of innkeepers and hospitals. (Footnotes omitted.)

5. Those South Carolina cases that discuss the higher standard of care of common carriers seem to consider the principle as axiomatic. Cases from other jurisdictions suggest at least three reasons for the extraordinary liability of common carriers. First, the contract of passage between the carrier and the passenger is said to contain an implied assurance that the passenger will be transported safely. *See, e. g., New Jersey Steamboat Co. v. Brockett*, 121 U.S. 637, 7 S.Ct. 1039, 30 L.Ed. 1049 (1887); *Co-op Cab Co. v. Singleton*, 19 S.E.2d 541 (Ga. App.1942); *Hairston v. Atlantic Greyhound Corp.*, 220 N.C. 642, 18 S.E.2d 166, 169 (1942). Second, common carriers are thought to be charged with public responsibilities; the stringent standard of care is therefore imposed as a matter of public policy. *See, e. g., Matsuda v. Hammond*, 77 Wash. 120, 137 P. 328, 330 (1913). Finally, it has been suggested that the special duties of the common carrier arise from the fact that the passenger has entrusted his safety, as a bailor entrusts his goods, to the custody and safekeeping of the carrier. *See Vanderhule v. Berinstein*, 285 App.Div. 290, 136 N.Y.S.2d 95, 103 (1954). We cannot say which of these theories, if any, explains the South Carolina decisions.

Court of South Carolina to the South Carolina legislature in matters involving a change in the common law. Plaintiff's right to recovery may be sustained only by extending the exception to the traditional rule of *respondeat superior* that a principal is not liable for his servant's unauthorized intentional tort in derogation of the common law. But the South Carolina courts have been reluctant to expand tort liability. The Supreme Court of South Carolina has twice declined to abolish or alter the doctrine of charitable immunity, although it expressed no doubt about its authority so to do. *Belton v. Richland Memorial Hospital,* 263 S.C. 446, 211 S.E.2d 241 (1975); *Decker v. Bishop of Charleston,* 247 S.C. 317, 147 S.E.2d 264 (1966). It took a similar position with respect to the necessity of the privity of contract requirement in products liability cases in *Springfield v. Williams Plumbing Supply Co.,* 249 S.C. 130, 153 S.E.2d 184 (1967).[6] *See, also, McHugh v. Carlton,* 369 F.Supp. 1271 (D.S.C.1974); *O'Hagan v. Fraternal Aid Union,* 144 S.C. 84, 141 S.E. 893 (1928).

### V.

To summarize: Plaintiff's right to recovery is barred by operation of the rule of *respondeat superior* since the assault by Roberts was neither in furtherance of Guardsmark's business nor within the scope of Roberts' employment. We do not think that this case may be treated as an exception to this rule under existing South Carolina precedents or statutes, and we do not think that the South Carolina Supreme Court would reach a different conclusion. It follows that the judgment from which the appeal is taken is

*REVERSED.*

K. K. HALL, Circuit Judge, dissenting:

While I concede that *Apex Smelting Co. v. Burns,* 175 F.2d 978 (7th Cir. 1949), the subsequent amendment of the licensing statute for detective agencies, and the subsequent interpretation favoring liability following the legislative amendment in *Stewart Warner Corp. v. Burns International Security Services, Inc.,* 353 F.Supp. 1387 (N.D.Ill.1973), are analogous to the factual situation presented in the instant appeal, nevertheless they are of course not controlling. The South Carolina Supreme Court has held that, "[t]he decisions of courts from other jurisdictions are, of course, only persuasive authority . . . ." *South Carolina State Highway Department v. Wilson,* 254 S.C. 360, 175 S.E.2d 391, 395 (1970).

Accordingly, I would hold as did the district judge that liability was properly imposed on Guardsmark based upon the pervasive scheme of regulation of security guards in South Carolina under the South Carolina Private Detective and Private Securities Agencies Act, S.C.Code §§ 56–646.1 through 646.17 (1975 Cum.Supp.).

Furthermore, the voice of all that is right and just cries out for affirmance in this case. The trial judge clearly recognized that the plaintiff had been wronged by the defendant even though he had difficulty in finding precedent for his rulings. We have passed the point in the law where there must be a writ for every right and we must, if necessary, articulate new law to cover new circumstances.

Here, the plaintiff did not ask for the protection of guards, and could not have elected to refuse that protection. When the defendant took upon itself the responsibility of bringing armed guards into the plant, it, by its own act, made the plaintiff, and all other employees of like situation, subject to their dominance. The defendant made the plaintiff a helpless victim and subjected her to a danger created by it. She was raped and assaulted by the defendant's man. Roberts was not a fellow employee. He was the plaintiff's protector. There is no question but that the defendant would have been liable if Roberts had stood by and watched a third person assault the plaintiff.

---

**6.** The legislature subsequently abolished the requirement by enacting S.C.Code § 66–371 to 373 (1975 Cum.Supp.).

Why then should not the defendant be liable when the guard, the paid protector, becomes the assailant?

I would affirm.