Antoinette SEBASTIAN, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 92–CV–551.

District of Columbia Court of Appeals.

Argued Oct. 25, 1993.
Decided Jan. 31, 1994.

** Associate Judge Sullivan has recused himself from this case.

Douglas R. Sparks, for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellee.

Before SCHWELB, FARRELL, and KING, Associate Judges.

KING, Associate Judge:

The plaintiff in the trial court appeals the dismissal of two counts of a seven count complaint against the District of Columbia ("District"), setting forth claims stemming from a sexual assault committed upon her by an ambulance attendant employed by the

District. She urges this court to hold the District vicariously liable for intentional torts by an employee, for acts committed outside the scope of employment, under a theory of "breach of non-delegable duty of protective care." We decline to do so and accordingly affirm.

## I.

On June 2, 1988, appellant, seriously injured in an automobile accident, was transported in a District of Columbia owned and operated ambulance for emergency treatment at D.C. General Hospital. Claiming that during the ride to the hospital the ambulance attendant, David Joy, sexually molested her, she filed a seven count complaint against the District.[1] The only count considered by the jury was Count I, alleging that the government was negligent in the hiring, training, supervision, and duty assignment of Joy. The jury returned a verdict in favor of the District of Columbia on that count. Prior to trial, the trial court had dismissed the other counts, including Counts VI and VII, which alleged breach of implied contract of safe carriage and breach of non-delegable duty to provide safe carriage, ruling that the "public duty doctrine" barred recovery. Only the trial court's ruling as to those two counts is challenged in this appeal.

The District argues here, for the first time, that appellant's claims are barred by the statute of limitations. Alternatively, it contends that dismissal was proper because the rule of *respondeat superior* does not apply to intentional torts committed by employees acting outside the scope of employment.[2]

---

1. Count I alleged negligent hiring, supervision, training and duty assignment by the District of Columbia Emergency Ambulance Bureau and the jury found against appellant on that count. Counts II through V asserted that the District was liable under the theory of *respondeat superior* for assault and battery (Count II) and intentional infliction of emotional distress (Count III), and was liable for negligence (Count IV) and negligent infliction of emotional distress (Count V). The trial court dismissed those four counts on statute of limitations grounds. Appellant challenges neither the trial court's action with respect to those four counts, nor the jury's verdict against her on Count I.

2. Appellant contends that the District also raises this argument for the first time on appeal, and hence should be held to have waived it. The District's assertion of the public duty defense in the trial court, however, can fairly be held to encompass its argument in this court that any duty it owed appellant should not be extended beyond ordinary principles of negligence and *respondeat superior*. Moreover, the issue before us of the scope of the District's duty to persons transported by ambulance is purely one of law and, therefore, even if the District on appeal does not defend the trial court's reliance upon the public duty doctrine proper, *see, e.g., Powell v. District of Columbia,* 602 A.2d 1123 (D.C.1992), we regard this as a case where we may affirm the judgment of the trial court for reasons other

With respect to the latter contention, appellant maintains that vicarious liability can be imposed on the District on the basis of a breach of a non-delegable duty of protective care. Because we hold that there can be no vicarious liability on the part of the District under these circumstances, we do not address the District's statute of limitations claim.[3]

## II.

Appellant acknowledges that the causes of action asserted by her have not heretofore been recognized in this jurisdiction. She asks this court to fashion new law because, she argues, the District should be held accountable under the circumstances of this case, for the torts of its employees—even if the tortious act is beyond the scope of employment—under a theory of breach of non-delegable duty of protective care. Appellant claims that "the better reasoned case law, the RESTATEMENT (SECOND) OF AGENCY and sound public policy all support the proposition that the District of Columbia should be held accountable for the subsequent conduct of its ambulance attendant." After reviewing the material presented, we decline to accept appellant's invitation because we are of the view that such an expansion of tort liability invokes significant public policy concerns that are better left to the legislature to resolve.

## III.

It is well settled that "[u]nder the doctrine of *respondeat superior*, an employer may be held liable for the acts of his employees committed within the scope of their employment." *Boykin v. District of Columbia,* 484 A.2d 560, 561 (D.C.1984) (citation omitted). *Boykin* involved a sexual assault on a school child by a District employee. At trial, Boykin contended that "the District was liable for damages either vicariously, based on the theory of *respondeat superior,* or directly, for negligence in hiring or supervising [the employee]." *Id.* The trial court granted the District's motion for summary judgment, finding that the District could not be held liable on the *respondeat superior* ground because the employee's act was outside the scope of his employment. *Id.* at 564. In affirming the decision of the trial court, we observed that while the victim had suggested that the government could be held liable for acts committed beyond the scope of employment, there appeared to be no "authority that would authorize imposition of vicarious liability" for such acts. *Id.* at 564 n. 3. In declining to "pass upon the issue" whether liability should be extended to include acts committed by employees outside the scope of employment, we observed that such broadened liability has usually been limited to common carriers, innkeepers, and hospitals. *Id.*

than those upon which it relied. *See Marinopolski v. Irish,* 445 A.2d 339, 340 (D.C.1982).

Further, we recently held that "judgment of the trial court may be affirmed on a ground not raised or considered below." *Sheetz v. District of Columbia,* 629 A.2d 515, 519 n. 5 (D.C.1993) (citation omitted). In *Sheetz,* we observed that on appeal the District was not relying on any evidence not presented in the trial court, but "[r]ather, the District has brought to our attention legal material—statutes, regulations, and case law—which are available to counsel for all parties, and of which we can properly take judicial notice. Appellants have had an appropriate opportunity to respond to the District's arguments, and have suffered no procedural unfairness." *Id.* Similarly, we conclude in this case that the issue is properly before us.

3. Appellant correctly argues that our precedent uniformly holds that if the statute of limitations defense is not raised in the trial court, generally it cannot be raised for the first time on appeal. *See Ledman v. G.A.C. Finance Corp.,* 213 A.2d

246 (D.C.1965). Nevertheless, both parties briefed and argued the issue of whether, on the merits, the statute of limitations would bar these claims. The District also asserts that if we were to reverse the order of the trial court dismissing Counts VI and VII it could, when the case is remanded, seek leave to amend its answer and then assert the statute of limitations defense. The determination of whether to grant or deny a motion to amend would be within the discretion of the trial court, and the District voices confidence in its ability to persuade the trial judge to provide such relief. The government further contends that if it is successful in amending the answer, it would then prevail on statute of limitations grounds. Therefore, the District argues that we should resolve this case by considering and adopting the statute of limitations argument it now advances. Because we hold there is no liability on any substantive ground, we do not decide that issue.

Appellant now asks us to do what the *Boykin* court declined to do, at least on the facts of *Boykin*, i.e., extend tort liability to acts committed by employees outside the scope of their employment. This extension of vicarious liability could be based, argues appellant, on either of two grounds: (1) that the District's ambulance service is a common carrier and common carriers are subject to a broader scope of liability than are others, or (2) a special relationship is created between the ambulance service and an ambulance passenger, who surrenders control over his or her safety, which imposes a special duty upon the ambulance service to protect the passenger from harm whatever the source. For the reasons set forth below we reject both grounds as bases for recovery.

### A. Common Carrier

■ Appellant urges us to find liability on the part of the District, under the facts presented here, by adopting the so-called "common carrier" doctrine which essentially imposes "no-fault" liability, and by extending that liability to include ambulance services. Because under our precedents, unlike the rule in a handful of other jurisdictions, common carriers are not subject to a wider scope of liability than others, we find no need to reach the question of whether an ambulance is a common carrier for those purposes.

In one jurisdiction that recognizes broad common carrier liability, the highest court has observed that "[c]ommon carriers ... are held liable for the negligence or the wilful wrongs of their employees, under the rule that a carrier is under an obligation to use a very high degree of care to prevent injuries that might be caused by the wilful misconduct of others." *Worcester Ins. Co. v. Fells Acres Day Sch. Inc.*, 408 Mass. 393, 558 N.E.2d 958, 967 (1990) (citations and internal punctuation and quotations omitted).[4] In addition, other jurisdictions hold common carriers liable for the misconduct of their employees regardless of whether or not the tortious conduct is within the scope of employment. *See, e.g., Rabon v. Guardsmark, Inc.*, 571 F.2d 1277, 1280 (4th Cir.1978) (observing that "South Carolina has recognized the non-delegable duty exception to the general rule of *respondeat superior*" for cases involving common carriers); *Commodore Cruise Line, Ltd. v. Kormendi*, 344 So.2d 896, 898 (Fla. Dist.Ct.App.1977) ("common carrier is liable to a passenger for the wrongful acts of his or her employees ... notwithstanding the fact that said acts are not within the scope of the employees employment"); *Co–Op Cab Co. v. Singleton*, 66 Ga.App. 874, 19 S.E.2d 541, 542 (1942) (cab company held liable for rape of passenger by cab driver because passengers are "entitled to be protected against the wanton and wilful act of violence wrongfully committed ... by the servant of the company"); *Hairston v. Atlantic Greyhound Corp.*, 220 N.C. 642, 18 S.E.2d 166, 170 (1942) ("Since the carrier owes a high duty to a passenger to protect him from assault from any source, a malicious or wanton assault committed on a passenger by an employee while on duty, whether within the line of his employment or not, constitutes a breach of duty directly imposing liability).[5]

---

4. In *Worcester*, although it discussed the liability of common carriers and the fact that Massachusetts had adopted and applied the broader liability imposed on common carriers, the court nonetheless refused to impose "common carrier-type liability on an enterprise such as a group daycare center." *Worcester Ins., supra*, 558 N.E.2d at 968. In rejecting an expansion of vicarious liability under those circumstances, the court observed that while hospitals "have been held to this standard" there is no precedent in any jurisdiction applying the higher standard to daycare centers; moreover, "imposition of common carrier liability on group day care centers would constitute a significant extension of current Massachusetts law." *Id.*

5. In *Rabon, supra,* a private security agency was sued after one of its employees sexually assaulted an employee working at a building the agency was employed to protect. On appeal, the Fourth Circuit discussed the "extraordinary liability of common carriers" and three justifications for imposing a higher standard of care. "First, the contract of passage between the carrier and the passenger is said to contain an implied assurance that the passenger will be transported safely. Second, common carriers are thought to be charged with public responsibilities; the stringent standard of care is therefore imposed as a matter of public policy. Finally, it has been suggested that the special duties of the common carrier arise from the fact that the passenger has entrusted his safety, as a bailor entrusts his goods, to the custody and safekeeping of the carrier." *Rabon, supra,* 571 F.2d at 1281 n. 5 (citation omitted).

This court, however, has never imposed a higher duty on common carriers or extended liability beyond standard negligence or scope of employment *respondeat superior* principles. "Although [precedent] speak[s] of a common carrier as being held to the highest degree of care, there are no categories of care, i.e., the care required is always reasonable care. What is reasonable depends upon the dangerousness of the activity involved." *District of Columbia Transit Sys., Inc. v. Carney,* 254 A.2d 402, 403 (D.C.1969). *See also Missile Cab Ass'n v. Rogers,* 184 A.2d 845, 847 (D.C.1962) ("No rule is better established than that which holds a common carrier to the highest degree of care toward its passengers for hire and creates liability upon proof of even slight negligence.... The injured party is not relieved from the burden of proving negligence...."); *Bray v. District of Columbia Transit Sys., Inc.,* 179 A.2d 387, 388–89 (D.C.1962) (a common carrier must exercise highest degree of care; however, before it can be held liable there must be proof of negligence); *District of Columbia Transit Sys., Inc. v. Smith,* 173 A.2d 216, 217 (D.C.1961) ("We have ruled that the high degree of care owed by a common carrier to its passengers extends to them when boarding and alighting; but a carrier is not an insurer and before it can be held liable for injury to a passenger there must be proof of negligence ... on the part of the carrier. No presumption of negligence on the part of the carrier arises ... [and it] is liable only when it is shown that it had notice....") (footnote omitted); *Lindsey v. District of Columbia Transit Co.,* 140 A.2d 306, 309 (D.C.1958) ("For the safety of its passengers, a common carrier is held to the highest degree of care commensurate with the particular hazards involved. Thus all the care ... of reasonable skill, foresight, and prudence ... is expected....") (footnote omitted). In short, although the language in our cases speaks of the high degree of care required of a common carrier, the cases all hold that a common carrier is subject to essentially the same standard as any other alleged tortfeasor, *i.e.,* an obligation to exercise due care. *See McKethean v. Washington Metro. Area Transit Auth.* ("WMATA"), 588 A.2d 708, 712 (D.C.1991) (holding that WMATA, as a common carrier, "owes a duty of reasonable care to its passengers") (citations omitted).

■ Moreover, we recently considered anew the scope of liability of common carriers and held that "[a] common carrier is required to protect its passengers against assault or interference with the peaceful completion of their journey." *WMATA v. O'Neill,* 633 A.2d 834, 840 (D.C.1993) (citation omitted). The protection required, however, is not all-encompassing, because "where a special relationship exists, such as between a common carrier and its passengers, the carrier ... has a duty to protect its passengers from *foreseeable* harm arising from criminal conduct of others." *Id.* at 840 (emphasis added and citation omitted). In resolving *O'Neill,* and the cases preceding it, on grounds of duty and foreseeability, this court has never imposed a duty of care on common carriers that "approach[es] that of an insurer," *Worcester, supra,* 558 N.E.2d at 968 (citation omitted), or that amounts to strict liability.[6] Rather, in order to prevail in a cause of action against a common carrier, a plaintiff must either meet the same burden of proof required for any negligence action or establish liability on traditional *respondeat superior* grounds. *See, e.g., District of Columbia v. Coron,* 515 A.2d 435, 437–38 (D.C. 1986); *Howard Univ. v. Best,* 484 A.2d 958, 987 (D.C.1984); *Johnson v. Weinberg,* 434 A.2d 404, 408 (D.C.1981). In sum, because we have not adopted the so-called common

The court also observed that "[p]laintiff's right to recovery may be sustained only by extending the exception to the traditional rule of *respondeat superior* that a principal is not liable for his servant's unauthorized intentional tort in derogation of the common law." *Id.* at 1282. The court held that even though South Carolina followed the common carrier doctrine imposing broader liability, it did not "impose ... a higher standard of civil liability than that to which ordinary business enterprises are held." *Id.* at 1281.

The court concluded that because South Carolina courts were "reluctant to expand tort liability," the right to recover was limited to established case law under *respondeat superior. Id.* at 1282.

6. We reiterated in *O'Neill* that the standard of care WMATA, as a common carrier, owes to its passengers is that of "reasonable care in the circumstances." *O'Neill,* 633 A.2d at 841 n. 13.

carrier doctrine, we reject appellant's claim that, as the owner of an ambulance, the District may be vicariously liable for intentional torts committed by an ambulance attendant, which were outside the scope of employment.[7]

### B. Special Relationship

■ Appellant also contends that this court should hold that a special relationship, creating tort liability, was established between the ambulance service and appellant.[8] She finds support in the RESTATEMENT (SECOND) OF AGENCY § 214 and comment (a) (1958):

A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty.

\* \* \* \* \* \*

By contract, however, or by entering into certain relations with others, a person may become responsible for harm caused to them by conduct of his agents or servants not within the scope of employment; the extent of this liability depends upon the duty assumed.

In essence, appellant is arguing that, as a matter of law, an implied contract was created imposing a duty on the part of the ambulance service to "deliver" people safely to the hospital and to protect them against criminal acts of employees. Appellant, however, presents no facts showing that the District promised to assume such a responsibility. And without proof of such an undertaking by the

District we decline, for the reasons stated above with respect to so-called common carrier liability, to hold that ambulance services implicitly contract to ensure the safe transport of their passengers against every kind of injury.

We find support for our conclusion in *G.L. v. Kaiser Found. Hosp., Inc.*, 306 Or. 54, 757 P.2d 1347 (1988), where the Supreme Court of Oregon rejected a contention that an implied contract can be presumed to have been created between a hospital and one of its patients. The court observed that because the "[p]laintiff did not allege any facts showing statements by the hospital which led her to rely on the hospital as a place of special safekeeping care ... [the] claim of liability ... comes down to a question of whether the hospital can be held as a matter of law to have implied an offer to all its patients that [it] is a place of safekeeping from the criminal acts of others." *Id.*, 757 P.2d at 1351. The court held that implying a contract "invents a legal fiction in order to create a foundation of 'duty' for an action for physical injuries." *Id.* at 1351. Finally, it concluded that "[t]he argument that plaintiff seeks to make in her 'contract' claim is best addressed to the legislature." *Id.* at 1354. We agree with that sentiment.

■ Appellant also cites authorities for the proposition that a higher duty of care is owed once a special relationship is created. Those holdings are grounded, however, in no more than the expanded common carrier type of liability that we have held affords appellant no relief. For example, in *Stropes v. Heritage House Childrens Ctr.*, 547 N.E.2d 244 (Ind.1989), a victim of cerebral

---

7. *But see Nazareth v. Herndon Ambulance Serv.*, 467 So.2d 1076, 1079–80 (Fla.Dist.Ct.App.1985) (holding that an ambulance is a common carrier subject to requirements as stringent as local buses or cabs, and is held to high standard of care imposing "extraordinary duty"); *Bricks v. Metro Ambulance Serv., Inc.*, 177 Ga.App. 62, 338 S.E.2d 438, 440, 443 (1985) (holding that an ambulance is a common carrier and that "a carrier owes a special duty to its passengers that is not dependent upon whether the servant acted in the scope of his employment, but is based upon its broad duty as a common carrier") (citation omitted).

8. Appellant proposes the following "special relationship test" to determine when the District's tort liability would extend to intentional torts outside the scope of employment: "Where an employer has a duty of care to provide protection to a person who is impaired and dependent, generated by the impaired person's surrender of control over his or her own safety to the employer, then the employer would be liable for wilful torts inflicted on that person by an employee." For the reasons stated in the text we find no basis for imposing liability under these circumstances, beyond that presently available.

palsy and gross mental retardation, residing in a childrens center, was sexually assaulted by a nurse's aide hired to "feed, bathe and change the bedding and clothing of residents ... as well as to monitor their comfort and safety." *Id.* at 245. The court held that "[a]n examination of the relevant relationship here *against the template of the common carrier exception* and the rationales underlying it reveals that [the children's center] clearly assumed a non-delegable duty to be responsible for the care and safety of [the child]." *Id.* at 253 (emphasis added).[9] *Stropes* provides no support for imposing liability against the District in this case because the *Stropes* court relied on the common carrier doctrine as the foundation for its holding of liability based on the special relationship between the childrens center and the victim. *See id.* Therefore, if we were to apply the same analysis as the *Stropes* court and apply our own common carrier doctrine, we would not impose the broader liability the *Stropes* court did. Rather, the result would be to bar recovery unless appellant could show she was entitled to relief either on accepted *respondeat superior* grounds or under ordinary negligence principles.

Moreover, in a case involving facts very similar to those presented in *Stropes,* the Supreme Court of Montana, whose common carrier liability is essentially the same as our own, refused to hold the state liable for the criminal conduct of an employee who was acting outside the scope of employment. *See Maguire v. State,* 254 Mont. 178, 835 P.2d 755 (1992). That case involved a retarded woman, residing in a state developmental center, who was raped by an employee of the center. The trial court, relying on § 214 of the Restatement (Second) of Agency—the provision cited in this court by appellant,[10]—directed a verdict holding the state liable for the criminal conduct of its employee. *Id.,*

835 P.2d at 757. The state Supreme Court reversed, ruling that "extension of liability should come from the legislature." *Id.* at 759. The court observed that "[w]e have not adopted the common carrier exception" to the doctrine of *respondeat superior. Id.* The court also observed that employers are not usually held liable for an employee's tortious conduct performed outside the scope of employment,[11] but rather "[an employer] may be held vicariously liable for the damages caused by another on the theory of respondeat superior or may be held directly liable on the theory of negligent hiring and/or supervision." *Id.* at 758. Like the Montana Supreme Court, we believe that any expansion of the *respondeat superior* doctrine that would extend liability to include acts committed outside the employee's scope of employment is best left to the legislature.

Appellant also relies on *Bembenista v. United States,* 275 U.S.App.D.C. 292, 866 F.2d 493 (1989), to support her claim that the District may be held liable for any injuries occurring when a special relationship is created. In *Bembenista,* a hospital patient brought suit under the Federal Torts Claim Act ("FTCA")[12] for a sexual assault committed upon her by a medical technician, working at the hospital, who was assigned to care for her. The United States Court of Appeals for the District of Columbia Circuit held for the patient, concluding that a "duty of protective care arose out of [the hospital's] special relationship with Mrs. Bembenista; [and that] this theory of liability does not depend on the employment status of the intentional tortfeasor." *Bembenista, supra,* 275 U.S.App.D.C. at 297, 866 F.2d at 498 (noting that hospital would be liable even if patient was assaulted by a private person not connected with the government because employment status "has nothing to do with imposing

---

9. The court noted that Indiana's common carrier exception to *respondeat superior* imposing broad liability "is premised on the ceding of power to ensure one's safety and protection from an individual to the enterprise which purports to provide it, and the exception ... has been applied to enterprises other than common carriers." *Stropes, supra,* 547 N.E.2d at 253.

10. *See supra* at 963.

11. The court did note that "we have limited application of the non-delegable duty exception to the respondeat superior doctrine to instances of safety where the subject matter is inherently dangerous." *Maguire, supra,* 835 P.2d at 759.

12. 28 U.S.C. §§ 1346(b), 2671–80 (1988 & Supp. IV).

liability on the Government") (internal punctuation omitted).

*Bembenista*, however, is distinguishable from this case on both the law and the facts. First, we note that action was brought under the FTCA, which imposes liability upon the federal government for "injury or loss of property, or personal injury or death caused by the *negligent or wrongful act* or omission of any employee of the Government while acting *within the scope of his office or employment.*" 28 U.S.C. § 1346(b) (emphasis added). No recovery is available, however, when the act causing the injury is an intentional tort. *See* 28 U.S.C. § 2680(h) (excludes from the FTCA's waiver of sovereign immunity "[a]ny claim arising out of assault [or] battery"). The *Bembenista* court held that under the FTCA "the Bembenistas may proceed on a theory that the government is liable for a breach of duty to a hospital patient to whom it owed a special obligation of protective care." *Bembenista, supra*, 275 U.S.App.D.C. at 296, 866 F.2d at 497 (relying on *Sheridan v. United States*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988)). In sustaining the Bembenistas' cause of action, the court framed its holding in terms of ordinary negligence, holding that the hospital "owed a *duty* to Mrs. Bembenista to protect her against *foreseeable*, injurious acts of third persons.... This duty was heightened by the fact that Mrs. Bembenista was *known* by the hospital to be blind and comatose or semi-comatose at the time of the attacks." *Id.*, 275 U.S.App.D.C. at 297, 866 F.2d at 498 (emphasis added and citation omitted). Thus, liability in *Bembenista* is premised solely on the negligence of the hospital in not protecting the patient from what the court held to be a foreseeable act by an employee.[13] *Bembenista* therefore cannot be read as extending *respondeat superior* liability to

include intentional torts committed by an employee acting outside the scope of employment.

We find further support for our view that *Bembenista* does not support recovery, on the ground asserted here, by the holding in *G.L. v. Kaiser Found. Hosp., Inc., supra.* There the Supreme Court of Oregon refused to broaden the vicarious liability of a hospital, finding that the only cause of action available was one based on negligence principles. In that case, a patient was sexually assaulted by a hospital employee. The patient brought an action seeking damages against the hospital on the basis of strict liability under *respondeat superior.*[14] The court observed that the "most common limitation on employer liability is that the intentional act must have been undertaken with the intent of furthering the business purposes of the employer, however misguided that intent might seem." *G.L., supra*, 757 P.2d at 1350. In rejecting strict liability as a basis for recovery, the court held that "[w]here, as here, there is no allegation—and we cannot imagine one—that the employee was acting for the purpose of furthering any interest of the employer, plaintiff has failed to state a claim for tort liability and dismissal of plaintiff's claims beyond theories of negligence was proper." *Id.*

Finally, appellant relies on *Eversole v. Wasson*, 80 Ill.App.3d 94, 35 Ill.Dec. 296, 398 N.E.2d 1246 (1980), where the court held that appellant had stated a cause of action, based on vicarious liability, for a public school teacher's assault on a student, even though the assault committed was outside the scope of employment. The court reasoned that the master has a duty, based on the special relationship created between the school district and the student, that requires him to protect the victim from the servant.[15]

---

**13.** In Counts IV and V of her complaint, appellant sought recovery on the very grounds on which Bembenistas recovered. Those counts were dismissed, however, on statute of limitations grounds. We, of course, do not address whether appellant could have recovered on those grounds under the circumstances of this case.

**14.** The patient also sought recovery on an implied contract theory, which is discussed *supra* at 963.

**15.** Although the court observed that "[o]rdinarily when a servant commits an intentional tort concerning a matter personal to him, the tort is deemed to have been committed outside the servant's employment though done during working hours and on the master's premises," it nonetheless found that a special relationship was created that required the School District to protect the student. *Eversole, supra*, 35 Ill.Dec. at 297–98, 398 N.E.2d at 1247–48.

Upon virtually identical facts, however, this court in *Lacy v. District of Columbia,* 424 A.2d 317 (D.C.1980), declined to impose liability. In *Lacy,* the jury had returned a verdict against a mother and daughter who had brought a negligence action against the District for damages caused by a school janitor's sexual assault on the daughter and the jury found in favor of the District. The jury had been instructed that the District could only be liable if plaintiffs had shown that the District "had knowledge or should have had knowledge of the likelihood that [the child] would be assaulted" while at the school. *Id.* at 322. In approving the jury instruction, we observed that "a defendant will be responsible for the damages which result, despite the intervention of another's act in the chain of causation, [only] if the danger of an intervening negligent or criminal act should have been *reasonably anticipated and protected against.*" *Id.* at 323 (quoting *St. Paul Fire & Marine Ins. Co. v. James G. Davis Constr. Corp.,* 350 A.2d 751, 752 (D.C.1976) (emphasis added and internal quotations omitted). Therefore, under the principles set forth in *Lacy,* appellant would have to show that the criminal act of Joy should have been reasonably anticipated and protected against, in order to establish a basis for liability. In short, on those facts liability, if any, is grounded in traditional negligence principles. Thus, the *Lacy* court reached a result opposite the one reached by the *Eversole* court and held there was no liability on that ground.

Recovery on a negligence theory may or may not have been available in this case. Since the counts of the complaint [16] seeking recovery on that ground were dismissed on statute of limitations grounds, however, that question was not presented to the Superior Court in a timely fashion. Appellant cannot revive that theory of recovery by recharacterizing it as a "special relationship" imposing liability.

### IV.

In summary, we decline to adopt either the common carrier doctrine that imposes liability upon the employer for torts committed by employees outside the scope of employment, or the non-delegable duty expansion of *respondeat superior* liability. We are satisfied, as were the highest courts of Oregon, in *G.L. v. Kaiser Found. Hosp., Inc., supra,* and Montana, in *Maguire v. State, supra,* that such a major extension of current law must be left to the legislature.

*Affirmed.*

16. Counts IV and V.